## RADIO STATION WOW, INC. ET AL. *v.* JOHNSON.

No. 593.   Argued March 1, 1945.—Decided June 18, 1945.

*Mr. James Lawrence Fly,* with whom *Messrs. Francis P. Matthews, Rainey T. Wells, Monroe Oppenheimer, Peter Shuebruk, Earl Cline* and *Paul P. Massey* were on the brief, for petitioners.

*Mr. Don W. Stewart* for respondent.

*Solicitor General Fahy, Messrs. Ralph F. Fuchs, Charles R. Denny* and *Harry M. Plotkin* filed a brief for the United States.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case concerns the relation of the Federal Communications Act, 48 Stat. 1064, 47 U. S. C. § 151 *et seq.*, to the power of a State to adjudicate conflicting claims to the property used by a licensed radio station. At the outset, however, our right to review the decision below is seriously challenged.

The facts relevant to the jurisdictional problem as well as to the main issues are these, summarized as briefly as accuracy permits. Petitioner, Woodmen of the World Life Insurance Society, a fraternal benefit association of Nebraska, owns radio station WOW. The Society leased this station for fifteen years to petitioner, Radio Station WOW, Inc., a Nebraska corporation formed to operate the station as lessee. After the Society and the lessee had jointly applied to the Federal Communications Commission for consent to transfer the station license, Johnson, the respondent, a member of the Society, filed this suit to have the lease and the assignment of the license set aside for fraud. While this suit was pending, the Federal Communications Commission consented to assignment of the license, and the Society transferred both the station properties and the license to the lessee. Thereafter the Society answered that "the Federal Communications Commission . . . has and concedes that it has no jurisdiction over the subject matter of plaintiff's action, except jurisdiction to determine the transfer of the license to operate said radio station, which jurisdiction after full and complete showing and notwithstanding objections filed

thereto, was exercised in the approval of the transfer of said license to the defendant Radio Station WOW, Inc. and further order to the Society to execute and perform the provisions of said lease by virtue of which the possession of said lease property has now been delivered to the lessee, all as more particularly herein found." Respondent's reply admitted "that the Federal Communications Commission has and concedes that it has no jurisdiction over the subject matter of plaintiff's action except jurisdiction to determine the transfer of the license to operate said radio station." The trial court found no fraud and dismissed the suit.

The Supreme Court of Nebraska, three Judges dissenting, reversed and entered judgment for respondent, directing that the lease and license be set aside and that the original position of the parties be restored as nearly as possible. 144 Neb. 406, 13 N. W. 2d 556. The judgment further ordered that an accounting be had of the operation of the station by the lessee since it came into its possession and that the income less operating expenses be returned to the Society.[1] On motions for rehearing, the

---

[1] The judgment directed "that said judgment of the district court be, and hereby is, reversed and cause is remanded, with directions that the lease to the station, the lease to the space occupied by the station and the transfer of the license to operate the station be vacated and set aside; that the $25,000 of accounts turned over by the society to lessee be returned; that an accounting be had of the operation of the station by lessee since it took possession thereof on January 14, 1943, and that the income thereof less operating expenses be returned to the society; that the license to operate the station be returned and that lessee be directed to do all things necessary for that purpose; that generally everything be done to restore the parties to their original position prior to the entering into the lease; that all expenses had by the society in connection with the transfer of the station and license to the lessee and the expense had in connection with returning the same to the society pursuant hereto are to be paid by the lessee. It is further ordered and adjudged that all costs, both in this court and in the district court shall be paid by the defendants,

petitioners asserted that only the Federal Communications Commission and the federal courts had jurisdiction over the subject matter, not the Nebraska courts. These motions were denied in an opinion in which the Nebraska Supreme Court stated, "We conclude at the outset that the power to license a radio station, or to transfer, assign or annul such a license, is within the exclusive jurisdiction of the Federal Communications Commission. . . . The effect of our former opinion was to vacate the lease of the radio station and to order a return of the property to its former status, the question of the federal license being a question solely for the Federal Communications Commission. Our former opinion should be so construed." The claim that the Nebraska courts had no jurisdiction over the subject matter of the action was thus dealt with: "The fact that the property involved was used in a licensed business was an incident to the suit only. The answer of the defendants, heretofore quoted, squarely contradicts the position they now endeavor to assume. Their position is unsound on its merits and, in addition thereto, it was eliminated from the case by the pleadings they filed in their own behalf." 144 Neb. 432, 14 N. W. 2d 666. Because of the importance of the contention that the State court's decision had invaded the domain of the Federal Communications Commission, we granted certiorari. In the order allowing certiorari we directed attention to the questions whether the judgment is a final one and whether the federal questions raised by the petition for certiorari are properly presented by the record. 323 U. S. 705.

Since its establishment, it has been a marked characteristic of the federal judicial system not to permit an appeal until a litigation has been concluded in the court of first instance. See *Heike* v. *United States,* 217 U. S.

except the Woodmen of the World Life Insurance Society, costs in this court being taxed at $. . . . ; for all of which execution is hereby awarded, and that a mandate issue accordingly."

423; *Cobbledick* v. *United States,* 309 U. S. 323; *Catlin* v. *United States,* 324 U. S. 229. This requirement has the support of considerations generally applicable to good judicial administration. It avoids the mischief of economic waste and of delayed justice. Only in very few situations, where intermediate rulings may carry serious public consequences, has there been a departure from this requirement of finality for federal appellate jurisdiction. This prerequisite to review derives added force when the jurisdiction of this Court is invoked to upset the decision of a State court. Here we are in the realm of potential conflict between the courts of two different governments. And so, ever since 1789, Congress has granted this Court the power to intervene in State litigation only after "the highest court of a State in which a decision in the suit could be had" has rendered a "final judgment or decree." § 237 of the Judicial Code, 28 U. S. C. § 344 (a). This requirement is not one of those technicalities to be easily scorned. It is an important factor in the smooth working of our federal system.

But even so circumscribed a legal concept as appealable finality has a penumbral area. The problem of determining when a litigation is concluded so as to be "final" to permit review here arises in this case because, as has been indicated, the Nebraska Supreme Court not only directed a transfer of property, but also ordered an accounting of profits from such property. Considerations of English usage as well as those of judicial policy would readily justify an interpretation of "final judgment" so as to preclude reviewability here where anything further remains to be determined by a State court, no matter how dissociated from the only federal issue that has finally been adjudicated by the highest court of the State. Specifically, it might well be held that, even though definitive rulings on questions otherwise reviewable here have been made below, such rulings cannot be brought here for

review if the State court calls for the ascertainment by a master or a lower State court of an account upon which a further decree is to be entered. See *California National Bank* v. *Stateler*, 171 U. S. 447, 449; Boskey, *Finality of State Court Judgments under the Federal Judicial Code* (1943) 43 Col. L. Rev. 1002, 1009; Robertson and Kirkham, Jurisdiction of the Supreme Court (1936) p. 58.

Unfortunately, however, the course of our jurisdictional history has not run as smoothly as such a mechanical rule would make it. To enforce it now, or to pronounce it for the future, would involve disregard of at least two controlling precedents, both of them expressing the views of unanimous courts and one of which has stood on our books for nearly a hundred years in an opinion carrying the authority, especially weighty in such matters, of Chief Justice Taney. Leaving to a footnote the details of a somewhat sinuous story,[2] it suffices to say that *Forgay* v.

---

[2] Most of the cases cited which involve an accounting have come from federal courts. In this category are *Forgay* v. *Conrad*, 6 How. 201; *Thomson* v. *Dean*, 7 Wall. 342; *Winthrop Iron Co.* v. *Meeker*, 109 U. S. 180; *Keystone Iron Co.* v. *Martin*, 132 U. S. 91; *McGourkey* v. *Toledo & Ohio R. Co.*, 146 U. S. 536; *Gulf Refining Co.* v. *United States*, 269 U. S. 125.

In the *Forgay* case the court below set aside a conveyance of land and slaves and ordered a master to take an accounting of the rents and profits. This Court held the decree to be appealable since immediate delivery of the property was ordered although the decree was "not final, in the strict, technical sense of that term." The Court said of the lower court judgment that "the bill is retained merely for the purpose of adjusting the accounts referred to the master. In all other respects, the whole of the matters brought into controversy by the bill are finally disposed of as to all of the defendants." 6 How. 201, 204. It was suggested that if appellants had to wait, they would be subjected to irremediable injury, for execution had been awarded. Also held final was the decree in *Thomson* v. *Dean, supra,* where the court ordered immediate transfer of stock and an accounting to determine the amounts paid and to be paid and the dividends accrued. In *Gulf Refining Co.* v. *United States, supra,* a judgment was held to be final where the original decrees enjoined defendants from taking

*Conrad,* 6 How. 201, and *Carondelet Canal Co.* v. *Louisiana,* 233 U. S. 362, found the requirement of finality to be satisfied by judgments the characteristics of which cannot be distinguished from those presented by the Nebraska decree. In short, the rationale of those cases is that a judgment directing immediate delivery of physical property is reviewable and is to be deemed dissociated from a provision for an accounting even though that is decreed in the same order. In effect, such a controversy is a multiple litigation allowing review of the adjudication which is concluded because it is independent of, and unaffected by, another litigation with which it happens to be entangled. Compare *Clark* v. *Williard,* 292 U. S. 112, 117–119; and see Note (1934) 48 Harv. L. Rev. 302.

---

oil from Government property and confirmed an accounting to January 1, 1918, although the decree appealed from ordered a further accounting for oil extracted *pendente lite.* The Court observed that the decrees were final for the purpose of the original appeals. All of these cases rely on the fact that there had been a conclusive adjudication of the rights and liabilities of the parties with immediate delivery of possession of the subject matter of the suit. This consideration was emphasized in *Grant* v. *Phoenix Ins. Co.,* 106 U. S. 429, 431–432, and in *Collins* v. *Miller,* 252 U. S. 364, 371.

Another line of cases starts with *Winthrop Iron Co.* v. *Meeker, supra,* where a decree was held final, although an accounting was ordered, because no accounting had been prayed for in the bill. This unsubstantial distinction was seized upon in *Keystone Iron Co.* v. *Martin, supra,* and in *McGourkey* v. *Toledo & Ohio R. Co., supra,* to hold not final decrees in cases where an accounting had been sought.

The cases from State courts are less numerous. *California National Bank* v. *Stateler, supra,* stated broadly that a judgment remanding for an accounting is not final. In that case, an intervening party, appointed pursuant to State law as agent for bank stockholders, secured an order directing that money be turned over to him less the holder's costs, disbursements and attorney's fees. In addition, if it should be found that the holder had received certain stock as alleged then the stock also should be turned over. But there was no immediate delivery of anything since the amount of money to be turned over re-

The presupposition in allowing such review is that the federal questions that could come here have been adjudicated by the State court, and that the accounting which remains to be taken could not remotely give rise to a federal question. Of course, where the remaining litigation may raise other federal questions that may later come here, such as is true of eminent domain cases, see *Grays Harbor Co.* v. *Coats-Fordney Co.*, 243 U. S. 251, to allow review of an intermediate adjudication would offend the decisive objection to fragmentary reviews. Since, by awarding an execution, the Nebraska Supreme Court directed immediate possession of the property to be transferred, the case comes squarely within *Forgay* v. *Conrad, supra,* and *Carondelet Canal Co.* v. *Louisiana, supra,* and the challenge to our jurisdiction cannot be sustained.

This brings us to consider what federal questions are here. The court below decreed the transfer of property used as a radio station. It conceded that it had no jurisdiction over the transfer of the license under which WOW

---

mained to be ascertained as did the existence of the stock. And in *Sand Springs Home* v. *Naharkey*, 299 U. S. 588, the Court denied certiorari "for the want of a final judgment" in a case where the plaintiff's right to an undivided one-sixth interest in land was decreed plus an accounting for profits from the gas taken out of the land. In the absence of a partition, there could of course be no delivery of the property itself.

Opposed to the general observations in the *Stateler* case is the square ruling in *Carondelet Canal Co.* v. *Louisiana*, 233 U. S. 362. The State Supreme Court ordered that judgment be entered requiring delivery of a canal to Louisiana. Certain claims with respect to a small additional plot of ground were reserved and an accounting of receipts and disbursements in the management of the property was ordered. This Court denied a motion to dismiss for want of a final judgment. It noted that the decree required immediate delivery of the property to the State so that the decree possessed definiteness as to the matter decided. "In the case at bar there is distinct and explicit finality and the further proceedings are directed to apply only to the 'questions reserved.'" 233 U. S. 362, 372.

was operating. That is a matter which Congress has put in the keeping of the Federal Communications Commission. Petitioners claim that the court's decree in effect involves an exercise of the very authority which the court disavowed. This presents a federal question which was duly made below, and we must consider it.

But it is not open to us to consider independently the claim that the Federal Communications Act has withdrawn from the State court jurisdiction over the physical properties of the station and given it to the Federal Communications Commission. The Society's answer admitted that this controversy was outside the jurisdiction of the Commission except as it related to the transfer of the license, and respondent joined in this view. Only after the Nebraska Supreme Court's original opinion did petitioners, by motions to dismiss the suit and for rehearing, claim that the Nebraska courts were wholly without jurisdiction over the controversy. In its opinion on rehearing the Nebraska Supreme Court rejected this claim as "contrary to the pleadings filed" in the trial court, and also denied it on its merits. "The answer of the defendants, heretofore quoted," that court wrote, "squarely contradicts the position they now endeavor to assume. Their position is unsound on its merits and, in addition thereto, it was eliminated from the case by the pleadings they filed in their own behalf." ⋅ Questions first presented to the highest State court on a petition for rehearing come too late for consideration here, unless the State court exerted its jurisdiction in such a way that the case could have been brought here had the questions been raised prior to the original disposition. *Simmerman* v. *Nebraska,* 116 U. S. 54; *Godchaux Co.* v. *Estopinal,* 251 U. S. 179; *American Surety Co.* v. *Baldwin,* 287 U. S. 156. Here the Nebraska Supreme Court held that the federal question had dropped out as a matter of pleading and also denied its merits.

This brings the situation clearly within the settled rule whereby this Court will not review a State court decision resting on an adequate and independent non-federal ground even though the State court may have also summoned to its support an erroneous view of federal law. "Where the judgment of the state court rests on two grounds, one involving a federal question and the other not . . . and the ground independent of a federal question is sufficient in itself to sustain it, this Court will not take jurisdiction." *Lynch* v. *New York*, 293 U. S. 52, 54–55. One of the petitioners, Radio Station WOW, Inc., seeks to avoid the force of this rule by suggesting that its answer did not make the concession as to the limited jurisdiction of the Federal Communications Commission upon which the Nebraska court relied. But it is not for us to consider the correctness of the non-federal ground unless it is an obvious subterfuge to evade consideration of a federal issue. See *Neilson* v. *Lagow*, 12 How. 98, 109–111. It may be Nebraska practice that the answer of one defendant binds the others, or that failure to raise a question in the pleadings precludes its consideration on rehearing. These are matters of State law and not our concern. Cf. *Fair Haven R. Co.* v. *New Haven*, 203 U. S. 379, 386.

The federal question that remains is whether, although the Nebraska court clearly recognized that the power to vacate a license and to authorize its transfer lies exclusively with the Federal Communications Commission, its decree in effect is inconsistent with such recognition. This is urged on two grounds. It is asserted that the Nebraska Supreme Court, by ordering the transfer of the licensed facilities from Radio Station WOW, Inc. to the Society although not having power to direct the transfer of the license, severed the licensed facilities from the license and therefore nullified the license. Secondly, it is urged that by ordering the parties "to do all things necessary" to

secure a return of the license to the defrauded Society, the State court invaded the Commission's function.

The judgment, following the original opinion, ordered that "the transfer of the license to operate the station be vacated and set aside." On rehearing, the court made it quite plain that it was within the exclusive jurisdiction of the Communications Commission to vacate radio licenses and declared that its former opinion should be so construed. While it did not formally modify its judgment, it is reasonable to assume that the view which it unambiguously rejected in its opinion it did not mean to assert through its judgment. *Hotel Employees' Local* v. *Board*, 315 U. S. 437, 440–441; *Burke* v. *Unique Printing Co.*, 63 Neb. 264, 88 N. W. 488. But in matters of potential conflict between State and federal authorities, avoidance of needless friction no less than good draftsmanship counsels explicit and not merely argumentative restriction of a State court's judgment within its powers.

In any event, we think the court went outside its bounds when it ordered the parties "to do all things necessary" to secure a return of the license. Plainly that requires the Society to ask the Commission for a retransfer of the license to it and requires WOW not to oppose such transfer. The United States, in a brief filed at our request, suggests that this provision of the decree would probably also disqualify WOW from "applying for a new license to operate a radio station in Omaha on the same frequency, should it become equipped to do so." To be sure, the Communications Commission's power of granting, revoking and transferring licenses involves proper application of those criteria that determine "public convenience, interest, or necessity." § 307 (a), 48 Stat. 1064, 1083, 47 U. S. C. § 307 (a). But insofar as the Nebraska decree orders the parties "to do all things necessary" to secure the return of the license, it hampers the freedom of the Society not to continue in broadcasting and to restrict itself, as it prop-

erly may, to its insurance business. Equally does it prevent WOW from opposing a return to the Society, or, as the United States suggests, from seeking another license of its own. These are restrictions not merely upon the private rights of parties as to whom a State court may make appropriate findings of fraud. They are restrictions upon the licensing system which Congress established. It disregards practicalities to deny that, by controlling the conduct of parties before the Communications Commission, the court below reached beyond the immediate controversy and into matters that do not belong to it.

The most troublesome question raised by this case remains. While the decree of the State court concerning the transfer of the leasehold is, in view of the pleadings, not here as an independent question, due consideration of the federal question relating to the transfer of the license makes it proper to consider the bearing of a decree ordering an immediate transfer of the leasehold upon the status of the radio license. A proper regard for the implications of the policy that permeates the Communications Act makes disposition of licensed facilities prior to action by the Communications Commission a subsidiary issue to the license question. We have no doubt of the power of the Nebraska court to adjudicate, and conclusively, the claim of fraud in the transfer of the station by the Society to WOW and upon finding fraud to direct a reconveyance of the lease to the Society. And this, even though the property consists of licensed facilities and the Society chooses not to apply for retransfer of the radio license to it, or the Commission, upon such application, refuses the retransfer. The result may well be the termination of a broadcasting station. The Communications Act does not explicitly deal with this problem, and we find nothing in its interstices that dislodges the power of the States to deal with fraud merely because licensed facilities are involved. The "public interest" with which the Commission is

charged is that involved in granting licenses. Safeguarding of that interest can hardly imply that the interest of States in enforcing their laws against fraud have been nullified insofar as licensed facilities may be the instruments of fraud.

On the other hand, if the State's power over fraud can be effectively respected while at the same time reasonable opportunity is afforded for the protection of that public interest which led to the granting of a license, the principle of fair accommodation between State and federal authority, where the powers of the two intersect, should be observed. Severance of the licensed facilities from the license so precipitously that the Federal Communications Commission is deprived of the opportunity of enabling the two to be kept together needlessly disables the Commission from protecting the public interest committed to its charge. This presents a practical and not a hypothetical situation. To carry out abruptly a State decree separating licensed facilities from the license deprives the public of those advantages of broadcasting which presumably led the Commission to grant a license. To be sure, such a license is merely a permit to serve the public and not a duty to do so. Therefore, as we have concluded, the State has not been deprived by federal legislation of the practical power to terminate the broadcasting service by a proper adjudication separating the physical property from the license. We think that State power is amply respected if it is qualified merely to the extent of requiring it to withhold execution of that portion of its decree requiring retransfer of the physical properties until steps are ordered to be taken, with all deliberate speed, to enable the Commission to deal with new applications in connection with the station. Of course, the question of fraud adjudicated by the State court will no longer be open insofar as it bears upon the reliability as licensee of any of the parties.

New situations call for new adaptation of judicial remedies. We have had occasion to limit the conceded juris-

diction of the federal courts in order to give State courts opportunity to pass authoritatively on State issues involved in federal litigation. See, *e. g., Spector Motor Co. v. McLaughlin,* 323 U. S. 101. It will give full play both to the powers that belong to the States and to those that are entrusted to the Federal Communications Commission, where the two are intertwined as they are here, to enforce the accommodation we have formulated.

Accordingly, the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

MR. JUSTICE DOUGLAS concurs in the result.

MR. JUSTICE ROBERTS is of the opinion that the judgment should be affirmed.

MR. JUSTICE BLACK took no part in the consideration or decision of this case.

MR. JUSTICE JACKSON, dissenting.

I am unable to agree with the Court's disposition of this case and will indicate briefly the reason.

Petitioner is incorporated under the laws of Nebraska and operates a radio station owned by the Woodmen of the World, an insurance society also organized under the laws of Nebraska. It is clear that the State of Nebraska has plenary power over the internal affairs of both of these corporations.

The Woodmen of the World, in addition to its insurance business, went into the radio business through radio station WOW. It became involved in controversies and eventually decided that it ought to get out of the radio operation.

From 1923 to 1928, it had carried the radio station at a loss but its net average earnings from 1936 to 1942 were $194,724.14 per year. The property and facilities of the

corporation were leased to a new corporation in 1942 for $74,000.00 per year. The new corporation consisted of organizers whom the Court found sustained such a relation to the President of the insurance company who managed the negotiations on its behalf that the transfer constituted a constructive fraud on policyholders. It ordered that the transaction be undone and complete restitution be made. I take it that this judgment was fully within the competence of the State.

Meanwhile, the transferees had obtained approval of the Federal Communications Commission of the transfer of the license to them. Because of this, it is claimed that in some way the power of the State to undo this transaction is limited. Certainly no power has been conferred on the Federal Communications Commission to hear, try or determine the case of fraud between Nebraska stockholders and the officers of Nebraska corporations. The Commission has, of course, powers to look after the public interest in the transfer of stations.

There is possibility of conflict between the judgment rendered by the state court of Nebraska and the Federal Communications Commission and this possibility of conflict leads to the decision of the Court today. That conflict can occur only if the Federal Communications Commission shall hold that the federal public interest requires this radio station to be kept in the hands of those who are adjudged to be guilty of fraud and that the public interest cannot be served by those who have been adjudged to have been victims of that fraud although they had operated the station for many years with success and without any question as to the public interest. If the Communications Commission should render such a decision by refusing to retransfer the license in accordance with the judgment we would then have a question as to the faith and credit due the state court judgment and its effects in an administrative tribunal. I would deal with that sort

of question not hypothetically, but when it arises and upon the record which is made before the Communications Commission.

But even if the Commission should decide that the federal interest requires this station to be operated by those who have obtained it by constructive fraud, I think the judgment of the state court of Nebraska would still be good. It has the power not only to compel restitution of property obtained from its corporations in violation of its laws but if by federal proceedings or otherwise the wrongdoers have put some part of the value of this station beyond their power to recapture, the State has the right to compel them to account for its value. The State, it seems to me, has the right to strip the wrongdoers of every fruit of the wrong, including the value of the federal license, even if the license itself cannot be obtained.

For these reasons, I would affirm the judgment of the Nebraska courts and leave the problem of conflict to be dealt with when and if it arises.