SARTAIN, Judge.
Plaintiff, Big League Broadcasting Company, Inc., and third party plaintiffs, James H. Shedd and Leland Agard, bring this appeal from summary judgment rendered against them and in favor of defendant and third party defendant, Harry Womack, in a dispute arising from the sale of stock in Shedd-Agard Broadcasting, *248 Inc., a radio broadcasting facility. We reverse for reasons stated herein.
The record indicates that plaintiff, Big League Broadcasting Company, Inc. (hereinafter referred to as Big League) on February 4, 1970 sold to Shedd-Agard, Inc. all of the broadcasting facilities formerly owned by the vendor. The parties requested approval for the transfer of Big League’s operating license to Shedd-Agard which was granted by the Federal Communications Commission. In partial consideration for the sale, a note payable to Big League was issued by makers Shedd-A-gard, Incorporated, James Harold Shedd, and Leland Agard in the amount of $47,500.00.
Subsequent to the above transaction on June 12, 1970, Leland Agard sold all rights, title and interest held by him in Shedd-A-gard Broadcasting, Inc., represented by seventy-five shares of stock in the same, to James Shedd. In partial consideration for the sale, James Shedd assumed Agard’s responsibility as maker on the note payable to Big League. James Shedd then executed an act of sale with mortgage and assumption of mortgage on September 29, 1970, wherein he purportedly sold to Harry Womack
“All of vendor’s interest, right, and title in Shedd-Agard Broadcasting, Inc. consisting of ONE HUNDRED FIFTY (150) shares of stock represented by stock certificate Nos. One (1) and Two (2) of Shedd-Agard Broadcasting, Inc.”
In partial consideration for this sale, Wo-mack assumed the balance of the note payable to Big League. It was further agreed that all the stock would remain in escrow until certain other promissory notes were paid in full and that specifically the stock formerly owned by Agard would remain in escrow until, inter alia, “such time as vendee obtains FCC approval to purchase the radio station . . .” It does not appear from the record that any attempt to obtain F. C. C. approval had been made by anyone subsequent to the sale by Big League to Shedd-Agard, Incorporated.
There has since been a default in payment of the note payable to Big League and it now seeks enforcement of the obligation against the makers and against Womack on the basis of his assumption. Womack defends against this assertion of liability on his part by denying the validity of the sale of stock to him by Shedd. He contends his stock purchase was null and void on the basis of 47 U.S.C. § 310(b) which states:
(b) No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby. Any such application shall be disposed of as if the proposed transferee or assignee were making application under section 308 of this title for the permit or license in question; but in acting thereon the Commission may not consider whether the public interest, convenience, and necessity might be served by the transfer, assignment, or disposal of the permit or license to a person other than the proposed transferee or assignee.”
The trial judge in his reasons for judgment concluded:
“This statute prohibits the transfer of a radio station license voluntarily or involuntarily, directly or indirectly, or by transfer of control of a licensee corporation, without FCC approval. That this approval must be antecedent to such an assignment appears clear from the wording of the statute prohibiting the transfer or assignment, e. g. The vendee is referred to as the proposed transferee or assignee.
*249 “Transfer of control of a corporation holding a station license is a prohibited sale unless prior approval is obtained from the Federal Communications Commission.
“The motion is resisted on the ground that on the date of the execution of the sale Harry A. Womack agreed to make application for FCC approval of the sale, and that this was an implicit condition of the sale. (It is not clear whether it is contended this condition is suspensive or resolutory.) It is further contended that Harry A. Womack admitted that he had assumed the indebtedness in the act of sale, that he had ratified his assumption of the debt by making payments on the note, and he had further ratified his assumption of the debt by entering into a sale in which the proposed subsequent purchaser agreed to assume the obligation.
“Whether Womack agreed at the time of execution of the sale to make application to the FCC after execution of the sale is immaterial since the law provides that the seller shall not dispose of the station license by stock transfer without such approval of the FCC. The duty of the vendor not to transfer, assign or dispose of the station license by stock transfer possibly may be placed, if-FCC resulations will allow, on the shoulders of the proposed transferee who also has a duty to obtain such approval, but assuming on trial it could be shown that FCC rules allow the proposed transferor to thus relieve himself of this burden, it would necessarily be a precondition in connection with a proposed sale or transfer in order to come within the requirements of the statute. The FCC cannot be presented with a fait accompli in which the transferor in effect washes his hands of all responsibility. Congress has given the FCC the duty and authority to inquire in detail regarding the ownership and control of a radio station (see 47 USC 305 ff.), and the application for a sale of controlling stock in a licensee corporation must be disposed of by the FCC in the same manner as an original application by the transferee under 47 USC 308. The statute is inoperable if it means that approval may be applied for subsequent to the transfer.
“That Womack made payments on the indebtedness and operated the station without prior approval of the transfer by the FCC cannot breathe life into an unenforceable sale. No State Court can enforce a contract made in contravention of a constitutional statute of the United States Congress.”
Thus the trial judge held as a matter of federal law, specifically 47 U.S.C. § 310(b), that the sale of stock from Shedd to Womack was absolutely null and void. We respectfully disagree with this conclusion.
The Louisiana Supreme Court when construing 47 U.S.C. § 310(b) in Southern Broadcasting Corporation v. Carlson, 187 La. 823, 175 So. 587 (1937), stated at page 589:
“We have given an analysis of section 303 of the statute (47 U.S.C.A. § 303) to show what broad powers and extensive duties the Communications Commission has. But, from the general nature of these powers and duties, and their public character, we are constrained to believe that it was not intended by the act of Congress that the Communications Commission should be called upon to decide disputes of a personal or private nature, between individuals, such as the dispute that is presented in this case. In that connection our attention is called to section 414 of the act (47 U.S.C.A. § 414), which, under title 4, Procedural and Administrative Provisions, declares that nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.
Of course, a state court could not, without the approval of the Communica *250 tions Commission, order a transfer of a license, or of any right granted thereunder. 47 U.S.C.A. §§ 309(b)(2), 310(b). But the plaintiff in this case is not seeking to obtain from the defendant any right that he may have under his license to operate the radio station, or to prevent the defendant from exercising any right that he may have under the license. The plaintiff is suing for damages for an alleged breach of a contract, and for an injunction to prevent a further breach of the contract, which, as far as we see, is not violative of any provision in the Federal Communications Act of 1934.”
Thus the court effectively recognized the license and the rights which arise thereunder as being under the absolute control of the F.C.C. while at the same time recognizing the state retention of jurisdiction in personal and private transactions involving radio stations.
Subsequent to the Carlson case, the United States Supreme Court recognized a similar dichotomy in Radio Station WOW v. Johnson, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092. In the Johnson case the U. S. Supreme Court specifically held that the state court of Nebraska could order the transfer of the physical facility of a radio station where state law dictated such a transfer, even though such action would sever the facilities of the station from the license itself. The court, in noting that the result could well be the termination of an operative broadcasting facility, stated:
“To be sure, such a (broadcasting) license is merely a permit to serve the public and not a duty to do so. Therefore, as we have concluded, the State has not been deprived by federal legislation of the practical power to terminate the broadcasting service by a proper adjudication separating the physical property from the license.” 65 S.Ct. 1475, 1482.
In Regents of University System of Georgia v. Carroll, 338 U.S. 586, 70 S.Ct. 370, 94 L.Ed. 363, the U. S. Supreme Court allowed a party to recover on a contract it had with an owner of a radio station even though the F.C.C. had held said contract in violation of its rules. The court held that the Commission order could not directly affect the validity of the contract in question. The court, in the following language at page 377, made it clear that the FCC’s power is merely that over the license itself, and extends no further: 70 S. Ct. 370, 377
“Although the licensee’s business as such is not regulated, the qualifications of the licensee and the character of its broadcasts may be weighed in determining whether or not to grant a license. Federal Communications Commission v. Sanders Bros. Radio Station, 309 U.S. 470, 475, 642, 60 S.Ct. 693, 697, 84 L.Ed. 869, 1037; National Broadcasting Co., Inc., v. United States, 319 U.S. 190, 218, 227, 63 S.Ct. 997, 1010, 1014, 87 L.Ed. 1344. These cases make clear that the Commission’s regulatory powers center around the grant of licenses. They contain no reference to any sanctions, other than refusal or revocation of a license, that the Commission may apply to enforce its decisions.”
The court further stated at page 378:
“The Commission itself has indicated to Congress that it is embarrassed by its inability to issue cease and desist orders, that it has at its disposal only the cumbersome weapons of criminal penalties and license refusal and revocation. But, so far as we are aware, the Commission request did not go beyond asking for power to issue a cease and desist order 'against a licensee. No power was sought against a third party. Under the present statute, the Commission could make a choice only within the scope of its licensing power, i. e., to grant or deny the license on the basis of the situation of the applicant. It could insist that the applicant change its situation before it granted a license, but it could *251 not act as a bankruptcy court to change that situation for the applicant. The public interest, after all, is in the effective use of the available channels, and only to that extent in what particular applicant receives a license. The Commission has said frequently that controversies as to rights between licensees and others are outside the ambit of its powers. We do not read the Communications Act to give authority to the Commission to determine the validity of contracts between licensees and others.”
The trial judge in the present case evidently felt that since F.C.C. approval had not been sought or obtained to transfer the license, then the sale was null due to the fact that the transfer of the stock appeared to also transfer control of the license. We agree with that portion of the trial judge’s reasoning recognizing that only the F.C.C. could determine the validity of a license transfer and that state courts are without jurisdiction in that respect. However, we further note that pursuant to the Carroll case, supra, the F.C. C.’s jurisdiction is limited merely to control of the license and also pursuant to Johnson, supra, there can be a separation of the license from the facility which that license gives one the privilege of operating. In the present case, while any unapproved transfer of the license may be null, we cannot say that as a matter of federal law, the entire contract is null, for something other than a license may have been transferred. Therefore, certain facts which could appear at trial on the merits may lend total or partial validity to the sale here in question.
For the above and foregoing reasons, judgment against the plaintiff and third party plaintiff and in favor of defendant and third party defendant, Harry Womack, is reversed and the matter is hereby remanded to the district court for further proceedings not inconsistent with the views expressed herein. The cost of this appeal is to be borne by appellant. All other costs are to await a final determination on the merits.
Reversed and remanded.