Tim THEMY, Plaintiff and Respondent,

v.

SEAGULL ENTERPRISES, INC., a Utah Corporation, Shirley K. Watson, United Bank, a Utah Corporation, Zions First National Bank and Murray Broadcasting Company, Inc., Defendants and Appellants.

No. 15641.

Supreme Court of Utah.

April 4, 1979.

Gary A. Frank, Murray, Craig T. Vincent, W. Clark Burt, Salt Lake City, for defendants and appellants.

Steven H. Gunn, of Ray, Quinney & Nebeker, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

This case concerns the sale of a radio station, comprised of real property, broadcasting equipment and an FCC broadcasting license. Defendants admitted they had failed to make the required payments pursuant to the terms of the two operative agreements, and the district court granted plaintiff's motion for summary judgment, declaring the interests to be forfeited. Defendants contend factual issues prevent proper disposition by summary judgment, and the court improperly invaded the jurisdiction of the FCC by declaring defendants' interests in the license to be forfeited. We affirm, and award costs to plaintiff.

On June 26, 1974, the owner of KMOR (now KPRQ) radio station, O. J. Wilkinson, entered into two written agreements for the sale of the station to defendant Seagull Enterprises, Inc. (hereafter Seagull). Although one of the agreements concerned only the sale of the real property while the other concerned the sale of the personal

property and the FCC license, both documents were executed simultaneously, and each expressly stated that a breach of one would constitute a breach of the other. The consummation of both documents was expressly conditioned upon FCC approval of the transfer of the broadcasting license to Seagull. Both documents were closely patterned after the standard Uniform Real Estate Contract often used in this state; for example, both provided the seller with the same alternative remedies in the event of a breach by buyer: 1) seller could, after giving five days written notice, declare the interest of buyer to be forfeited and take possession of the premises; 2) seller could sue for all delinquent installments; or 3) seller could treat the contract as a note and mortgage and proceed to foreclose according to statutory provisions and have the property sold.

Upon obtaining FCC approval of the transfer of the license to Seagull in December, 1974, Seagull paid the required down payments of $5,000 for the real property and $74,000 for the personal property and license. No further payments were made by Seagull under the installment payment provisions of the contracts.

Because of Seagull's default under the agreements, Wilkinson notified Seagull on September 4, 1975 that Seagull's interest would be forfeited if it failed to bring all payments current within five days. Seagull tendered no payments, but Wilkinson took no further action regarding the forfeiture.

On May 26, 1976, Wilkinson entered into an installment sale contract with plaintiff Tim Themy (hereafter Themy) for the sale of the radio station, including all real and personal property and the license. Wilkinson also assigned to Themy his interest in the purchase agreements with Seagull.

On March 8, 1977, after obtaining FCC approval, Seagull transferred its interest in the license and the broadcasting equipment to defendant Shirley K. Watson, dba Murray Broadcasting Company. Thereafter, with FCC approval, Watson assigned her interest to defendant Murray Broadcasting Company, Inc. (hereafter MBC).

Plaintiff's original complaint was filed in October, 1976. In July, 1977, plaintiff filed an amended complaint, naming, in addition to the above defendants, United Bank and Zions First National Bank; the interests of the banks, however, are not in issue on appeal. The amended complaint asked the court to adjudge the interests of defendants Seagull, Watson, United Bank, and MBC in the real property to be forfeited; alternatively, it requested judgment for $245,000, the amount owing on the contract concerning the real property, and judgment foreclosing the agreement as a mortgage according to the contract terms. Regarding the contract to sell the personal property and the license, the amended complaint contained four alternative prayers for relief: 1) judgment declaring the license and property to be forfeited as per the contract terms; 2) judgment for $176,000, the amount owing on the contract, and judgment foreclosing the agreement as a mortgage; 3) judgment declaring plaintiff's interests to be secured according to the UCC, and allowing a sale of the collateral under the secured transactions provisions of the UCC; 4) judgment setting aside the conveyance by Seagull to Watson as fraudulent, and appointing a receiver to protect the property involved in the litigation.

After reviewing the record, including affidavits and the depositions of Themy, Watson and an officer of Seagull, the district court heard arguments of counsel and granted Themy's motion for summary judgment. The judgment declared the interests of Seagull, Watson, United Bank and MBC in the real property, the personal property and the FCC license to be forfeited according to the terms of the agreements between Wilkinson and Seagull. The court named Themy as the owner of all interests forfeited by virtue of Wilkinson's assignment to Themy on May 26, 1976.

■ As usual in reviewing a case disposed of in the district court by summary judgment, we consider the evidence in the

light most favorable to the losing party,[1] and affirm only where it appears there is no genuine dispute as to any material issues of fact, or where, even according to the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law.[2]

■ We note preliminarily that defendants do not contest the validity or enforceability of the agreements between Wilkinson and Seagull, and this Court will uphold the forfeiture provisions of such contracts, unless amounts retained as liquidated damages are so great as to be unconscionable, or in the nature of a penalty.[3] Nor do defendants Watson and MBC contend their interests are insulated from the forfeiture provisions by Seagull's assignment of its interests under the agreements. As assignees from the purchaser, Watson and MBC obtained only the interests held by Seagull, and clearly hold those interests subject to the original seller's rights retained by Wilkinson and later assigned to Themy.[4]

Defendants allege the existence of disputed facts concerning Themy's rights as the successor to Wilkinson's interest in the two purchase agreements which prevent summary judgment below. To support this claim, defendants assert Wilkinson assigned his interest in the agreements to Zions Bank prior to the assignment to Themy, and thus Wilkinson had no assignable interest to convey to Themy. Defendants also assert Wilkinson retained no enforceable forfeiture remedies under the contracts as they related to the FCC license, after the FCC approved the transfer of the license to Seagull. We address this issue at a later point herein.

■ No material factual issue exists regarding Themy's right to bring this action as successor to Wilkinson's interests. The undisputed evidence from Themy's deposition and accompanying exhibits showed Wilkinson assigned all his interests in both agreements to Themy. Wilkinson's prior assignment to Zions Bank affected only his interest in the agreement concerning the real estate, and was simply an assignment for security which accompanied a Trust Deed in favor of the bank. Although the interests which Wilkinson assigned to Themy in the real estate agreement were indeed subject to the security interest of Zions Bank, this in no way divested Wilkinson of all interest in the agreement, any more than a homeowner is divested of his ownership rights by mortgaging his property.[5]

■ Defendants next allege a factual issue exists regarding Themy's compliance with the remedial provisions of the agreements. The agreements provide:

DEFAULT OF BUYER. In the event of a failure to comply with the terms hereof by the Buyer, or upon failure of the Buyer to make any payment or payments when the same shall become due, or within 90 days or after, the Seller, at his option shall have the following alternative remedies:

A. Seller shall have the right upon failure of the Buyer to remedy the default within five days after written notice, to be released from all obligations in law and in equity to convey said property, and all payments which have been made theretofore on this contract by the Buyer shall be forfeited to the Seller as liquidated damages for the non-performance of the contract . . .

---

1. *Whitman v. W. T. Grant Co.*, 16 Utah 2d 81, 395 P.2d 918 (1964).

2. Utah Rules of Civil Procedure, 56(c); *Ruffinengo v. Miller*, Utah, 579 P.2d 342 (1978); *Durham v. Margetts*, Utah, 571 P.2d 1332 (1977).

3. *Johnson v. Carman*, Utah, 572 P.2d 371 (1977) and cases cited therein.

4. *Pearce v. Shurtz*, 2 Utah 2d 124, 270 P.2d 442 (1954); 77 Am.Jur.2d, Vendor and Purchaser, § 389.

5. Cf. *Murray First Thrift and Loan Co. v. Stevenson*, Utah, 534 P.2d 909 (1975). (Vendors could not refuse to convey title to assignee of purchaser because assignment from purchaser to assignee was made without vendors' approval as required by real estate contract, since assignment was given merely as security for loan.)

It is undisputed that none of defendants has made any payments under the contract subsequent to the initial down payments. In September, 1975, Wilkinson notified Seagull of its default, and of Wilkinson's intent to declare a forfeiture unless the default was remedied within five days. However, Wilkinson took no further action, and assigned his interests to Themy in May, 1976. Defendants allege that Wilkinson's right to declare a forfeiture was therefore waived; but regardless of that possibility, defendants were properly notified by Themy in September, 1977. The notice of default was delivered to Jay Gardner, a vice president of Seagull and manager of the radio station operated by MBC. The notice informed Seagull of Themy's election to declare a forfeiture under the agreements unless the delinquent payments were made current within five days, and the amount necessary to remedy the default was specified. No payments were made in response to this notice, nor have any payments been made at any time since 1974.

■ Although defendants make several objections to the validity of the notice given by Themy, they raise these claims for the first time before us, and we therefore decline to review them.[6]

■ Defendants also contend the district court improperly decreed a forfeiture of the $79,000 down payment made by Seagull to Wilkinson, because the forfeiture of so large a sum is an unconscionable penalty. The simple response to this allegation is that the district court merely declared defendants' interests in the property described in the agreements to be forfeited; the judgment does not address the matter of the down payment made to Wilkinson. Moreover, plaintiff's amended complaint requests no determination by the court with respect to the down payment to Wilkinson, and defendants did not raise that issue in their responsive pleadings nor did they make any attempt before the district court to have any portion of the down payment returned. Defendants' reliance on cases which hold that a forfeiture of substantial sums paid under a contract, ostensibly as liquidated damages, may be unconscionable,[7] is therefore misplaced. In those cases, the issue of unconscionability was properly raised by the purchaser either by a suit to recover sums paid or by an affirmative defense to the seller's action to declare a forfeiture. Neither course has been pursued by defendants in this case, and the issue is not properly before us.

■ We turn now to the question of whether the district court had power to adjudicate this controversy as it relates to the FCC license. The FCC has been empowered by Congress, in the public interest, with exclusive jurisdiction over radio broadcasting.[8] Section 310(d) of the Federal Communications Act provides as follows:

"No construction permit or station license, of any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby."

Defendants contend that in view of the above section, the district court was without power to adjudge that "the interests of defendants Seagull Enterprises, Inc., Shirley K. Watson, United Bank and Murray Broadcasting Company, Inc. in the FCC license described in and arising out of the Purchase Agreement for sale of the broadcasting equipment and license dated June 26, 1974 are forfeited by virtue of the default of the buyer thereunder." We disagree. The district court merely determined the respective rights of the parties under a private agreement, and the fact that the

---

6. *Hanover Limited v. Fields*, Utah, 568 P.2d 751 (1977).

7. *Johnson v. Carman*, supra note 3 and cases cited therein.

8. 47 U.S.C. §§ 151 et seq.; *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945).

agreement concerns a radio station does not divest the court of jurisdiction.[9]

In *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 65 S.Ct. 1475, 89 L.Ed. 2092 (1945), an insurance society (lessor) leased a radio station to Radio Station WOW, Inc. (lessee) and applied to the FCC for a transfer of the license to the lessee. At the same time, a member of the lessor sued in a Nebraska state court to have the lease set aside for fraud. While this suit was pending the FCC consented to the assignment of the license to the lessee, and the lessor transferred it and the station properties to the lessee. The Nebraska Supreme Court thereafter set aside the lease on the grounds of fraud, and directed that "the license to operate the station be returned and that lessee be directed to do all things necessary for that purpose; that generally everything be done to restore the parties to their original position prior to entering into the lease . . . ." The U. S. Supreme Court held that the Nebraska Supreme Court "went outside its bounds when it ordered the parties 'to do all things necessary' to secure a return of the license," [10] because the order required the lessor to ask the FCC for a retransfer of the license to it and required the lessee not to oppose the transfer. The court explained that the Nebraska order, by hampering the freedom of the lessor not to continue in broadcasting and preventing the lessee from opposing the revocation of its license, imposed restrictions not only upon private rights of the parties, but also upon the licensing system which Congress had established.

But the court emphasized the power of a state court to adjudicate issues involving FCC licenses as long as the state court does not affirmatively interfere with the authority of the FCC to authorize the transfer, assignment or other disposition of licenses:

. . . We have no doubt of the power of the Nebraska court to adjudicate, and conclusively, the claim of fraud in the transfer of the station by the Society to WOW and upon finding fraud to direct a reconveyance of the lease to the Society. And this, even though the property consists of licensed facilities and the Society chooses not to apply for retransfer of the radio license to it, or the Commission, upon such application, refuses the retransfer. The result may well be the termination of a broadcasting station. The Communications Act does not explicitly deal with this problem, and we find nothing in its interstices that dislodges the power of the States to deal with fraud merely because licensed facilities are involved. The "public interest" with which the Commission is charged is that involved in granting licenses. Safeguarding of that interest can hardly imply that the interest of States in enforcing their laws against fraud have been nullified insofar as licensed facilities may be the instruments of fraud. [326 U.S. at 131–2, 65 S.Ct. at 1481.]

The above view was reaffirmed by the Supreme Court in *Regents of the University System of Georgia v. Carroll*, 338 U.S. 586, 70 S.Ct. 370, 94 L.Ed. 363 (1950), which involved proceedings for the renewal of a radio license. The FCC ruled that, unless a contract between the licensee and a broadcasting company for the purchase of the latter's stock were invalidated, the license would not be renewed. After the licensee accordingly repudiated the contract, the broadcasting company sued in the state courts for an accounting, obtaining a judgment in its favor. The Supreme Court affirmed, stating:

. . . the [FCC] could make a choice only within the scope of its licensing power, i. e., to grant or deny the license on the basis of the situation of the applicant. It could insist that the applicant change its situation before it granted a license, but it could not act as a bankruptcy court to change that situation for the applicant. . . . The [FCC] has said frequently

---

**9.** *Stenger v. Stenger Broadcasting Corporation*, 28 F.Supp. 407 (D.C.Pa.1939); *Regents of University System of Georgia v. Carroll*, 338 U.S. 586, 70 S.Ct. 370, 94 L.Ed. 363 (1950).

**10.** 326 U.S. at 130, 65 S.Ct. at 1481.

that controversies as to rights between licensees and others are outside the ambit of its powers. We do not read the Communications Act to give authority to the [FCC] to determine the validity of contracts between licensees and others. [338 U.S. at 602, 70 S.Ct. at 378.]

The case at hand is not one in which a state court has impinged upon the jurisdiction of the FCC. The judgment simply enforces the terms of the agreements providing for forfeiture upon default by the purchaser, and declares the owner of the interests in the radio station and the license to be Themy. It does not require the parties to take any specific action regarding a retransfer of the license, as in *Radio Station WOW, Inc.* Significantly, the judgment did not grant Themy's requested relief for "a mandatory injunction requiring . . . defendants to assist plaintiff in obtaining transfer of the FCC license into plaintiff's name." The judgment of the court is not beyond its authority, under the law as outlined above.[11]

Finally, we turn to defendants' allegation of error in the district court's order appointing a receiver for the interests forfeited under the agreements. Rule 66, Utah Rules of Civil Procedure, provides:

(a) Grounds for Appointment. A receiver may be appointed by the court in which an action is pending or has passed to judgment:

\* \* \* \* \* \*

(4) After judgment, to dispose of the property according to the judgment, *or to preserve it during the pendency of an appeal*, or in proceedings in aid of execution when an execution has been returned unsatisfied, or when the judgment debtor refuses to apply his property in satisfaction of the judgment. [Emphasis added.]

The appointment of the receiver in this case was clearly proper under the rules, Themy's motion for appointment having been made after defendants filed their notice of appeal. We find no error on the part of the district court.

CROCKETT, C. J., and WILKINS, HALL and STEWART, JJ., concur.

---

11. See also *In Re Assignment of License of Station WMCA*, 10 FCC 241; *Big League Broadcasting Co., Inc. v. Shedd-Agard Broadcasting, Inc.*, La.App., 313 So.2d 247 (1975); *Stenger v. Stenger Broadcasting Corporation*, supra note 9.