Edward **LOOSLI**, Plaintiff and Appellant,

v.

**KENNECOTT COPPER CORPORATION; Kennecott Mining Corporation; and Kennecott Corporation,** Defendants and Appellees.

No. 920636–CA.

Court of Appeals of Utah.

March 16, 1993.

Rehearing Denied April 13, 1993.

Glen M. Richman, Richman & Richman, and Parker M. Nielson (argued), Salt Lake City, for plaintiff and appellant.

James B. Lee, James M. Elegante (argued), J. Michael Bailey, Parsons, Behle & Latimer, Salt Lake City, for defendants and appellees.

Jan Graham and Reed M. Stringham III, Salt Lake City, for amicus curiae State.

Before BENCH, GARFF and JACKSON, JJ.

## OPINION

GARFF, Judge:

Edward Loosli appeals the trial court's summary judgment in favor of Kennecott Copper Corporation, Kennecott Mining Corporation, and Kennecott Corporation (collectively referred to as "Kennecott"). We affirm.

In reviewing an appeal from a summary judgment, we view the facts in a light most favorable to the losing party. *Blue Cross and Blue Shield v. State,* 779 P.2d 634, 636 (Utah 1989); *Hardy v. Prudential Ins. Co. of Am.,* 763 P.2d 761, 763 (Utah App.1988). We recite the facts accordingly.

Kennecott owns real property located in Salt Lake County known as the Lark Sand Dunes. On August 1, 1977, Kennecott leased the property to the Utah State Division of Parks and Recreation. Pursuant to the express terms of the lease, the State agreed that the land would be used for recreational purposes in conjunction with the State's recreational vehicle program.

Prior to opening the property to the public, the State cleaned up debris and leveled out various areas of the property. Windy conditions, however, caused the sand at the property to shift, which, in turn, oftentimes exposed previously hidden debris. Soon

thereafter, the State opened the property to the public for off-road recreational vehicle use. Neither Kennecott nor the State charged the public an admission fee to enter the property. In addition to the initial cleanup, the State had an ongoing program to look for and clean up debris. After leasing the property, Kennecott did not patrol, supervise, or otherwise provide surveillance of the property.

On April 29, 1988, while the lease was in effect, Loosli and his son entered the property during a recreational outing to operate two Honda three-wheeled all-terrain vehicles (ATVs). While operating one of the ATVs, Loosli was severely injured when the right rear wheel of the ATV struck an object on the ground, causing the ATV to overturn. Loosli does not remember what caused the accident, and Loosli's son, who was operating the other ATV at the time, did not see the accident. At the time of the accident, the property had timbers protruding from the sand, which apparently constituted the remains of an abandoned mill. Rocks, in addition to the timbers, were scattered about the property.

On February 16, 1990, Loosli sued Kennecott to recover damages for his injuries. Loosli alleged that Kennecott knew or should have known of the property's alleged dangerous condition and that Kennecott willfully failed to guard or warn of such a condition.

Approximately eleven months later, Kennecott and Loosli moved for summary judgment. In its motion, Kennecott argued that it was entitled to summary judgment by virtue of the Limitation of Landowner Liability—Public Recreation Act, Utah Code Ann. §§ 57–14–1 to –7 (1990). After oral argument, the trial court granted summary judgment in favor of Kennecott and in turn denied Loosli's motion. The court ruled that the Act applies and that Kenne-

cott did not willfully or maliciously fail to warn of a dangerous condition so as to bring it within the exception to limited liability found in section 57–14–6(1)(a) of the Act. This appeal followed.

█ Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Rollins v. Petersen*, 813 P.2d 1156, 1159 (Utah 1991). We review for correctness the court's conclusions supporting its grant of summary judgment, according no deference to the trial court's legal conclusions. *See Jerz v. Salt Lake County*, 822 P.2d 770, 771 (Utah 1991).

█ Before reaching the merits of Loosli's claims, we consider whether the Act applies to the instant case. According to section 57–14–1, the express purpose of the Act "is to encourage public and private owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for those purposes."[1] The Act, pursuant to subsection (2) of section 57–14–2, broadly defines "owner" to include "the possessor of any interest in the land, whether public or private." Subsections (1) and (3) of section 57–14–2 respectively define "land" as "any land within the territorial limits of the state of Utah" and "recreational purpose" to include the use of "off-highway vehicles or recreational vehicles."

Based on the following undisputed facts, the Act applies to the instant case: (1) the property is located within the state of Utah; (2) Loosli was a recreational user within the meaning of the Act; and (3) Loosli paid no fee to enter or use the recreational property.[2] Thus, the trial court correctly concluded that the Act applies. We next consider the merits of the appeal.

---

**1.** To accomplish this purpose, the Act effectively eliminates the common law entrant categories in recreational cases to which the Act applies. *See* Utah Code Ann. § 57–14–4(2); Jim Butler, *Outdoor Sports and Torts: An Analysis of Utah's Recreational Use Act,* 1988 Utah L.Rev. 47, 51.

**2.** Section 57–14–6(1)(c), provides that a landowner's liability is not limited for an injury suffered when the owner charges for recreational use of the land, "except that where land is leased to the state or a subdivision of the state, any consideration received by the owner for the lease is not a charge within the meaning of this section."

■ Section 57–14–3 provides, subject to subsections (1) and (2) of section 57–14–6, that "an owner of land owes no duty of care to keep the premises safe for entry or use by any person using the premises for any recreational purpose, or to give any warning of a dangerous condition, use, structure, or activity on those premises to those persons." By so doing, the Act grants immunity from negligence actions to an owner who permits gratuitous recreational use of the owner's land.[3] *Ewell, by and through Ewell v. United States*, 579 F.Supp. 1291, 1294 (D.Utah 1984), *aff'd*, 776 F.2d 246 (10th Cir.1985). In addition, section 57–14–4 states:

Except as specifically provided in Subsection (1) of Section 57–14–6, an owner of land who either directly or indirectly invites or permits without charge any person to use the land for any recreational purpose does not thereby:

(1) make any representation or extend any assurance that the premises are safe for any purpose;

(2) confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed;

(3) assume responsibility for or incur liability for any injury to persons or property caused by an act or omission of the person or any other person who enters upon the land; or

(4) owe any duty to curtail his use of his land during its use for recreational purposes.

As an exception to the Act's limitation of liability, subsection (1) of section 57–14–6 provides in relevant part that "[n]othing in this act shall limit any liability which otherwise exists for ... willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Section 57–14–6 therefore preserves liability for willful or malicious conduct. *Golding v. Ashley Cent. Irrigation Co.*, 793 P.2d 897, 900 (Utah 1990).

Construing the meaning of "willful or malicious" set forth in section 57–14–6, the Utah Supreme Court in *Golding* adopted a tripartite standard requiring (1) knowledge of a dangerous condition, (2) knowledge that serious injury is the probable result of contact with the condition, and (3) inaction in the face of such knowledge. *Id.* at 901. In so doing, the court relied upon the leading article on the Utah Act, Jim Butler, *Outdoor Sports and Torts: An Analysis of Utah's Recreational Use Act*, 1988 Utah L.Rev. 47, 95–96:

According to Butler, the standard quoted by the federal court from *Brown v. Frandsen*, which incorporates the elements of knowledge of the dangerous condition and of the fact that serious injury is a probable result, and inaction in the face of such knowledge, is consistent with Utah case law,[4] with the Act's legislative history, and with the decisions of a majority of courts that have addressed analogous recreational use statutes. We also note that it is consistent with our statement in *Atkin Wright & Miles* and not obviously inconsistent with the general law regarding the duties of a landowner to trespassers, which has never been spelled out in Utah in great detail. We, therefore, are inclined to adopt the interpretation of the term "willful or malicious" in section 57–14–6 suggested by Butler.

*Golding*, 793 P.2d at 901 (footnote added and citations omitted).

■ We recognize that in reviewing a summary judgment, the evidence is considered in the light most favorable to the losing party, and we affirm only if there is no genuine dispute as to any material issue of fact. *D & L Supply v. Saurini*, 775 P.2d 420, 421 (Utah 1989) (quoting *Themy v. Seagull Enters., Inc.*, 595 P.2d 526, 528–29 (Utah 1979)). However, once a party properly moves for summary judgment as

---

**3.** Section 57–14–5 states that "[u]nless otherwise agreed in writing, the provisions of Sections 57–14–3 and 57–14–4 of this act are applicable to the duties and liability of an owner of land leased to the state or any subdivision thereof for recreational purposes."

**4.** *See Atkin Wright & Miles v. Mountain States Tel. and Tel. Co.*, 709 P.2d 330, 335 (Utah 1985); *Clayton v. Crossroads Equip. Co.*, 655 P.2d 1125, 1131 (Utah 1982); *Brown v. Frandsen*, 19 Utah 2d 116, 117, 426 P.2d 1021, 1022 (1967).

provided by Utah R.Civ.P. 56, the opposing party "may not rest upon the mere allegations or denials of his pleading," but that party's response, by affidavits as otherwise provided by Rule 56 "must set forth specific facts showing that there is a genuine issue for trial." Utah R.Civ.P. 56(e). If the opposing party does not make such a showing, summary judgment is appropriate. *Id.*

■ Kennecott, in support of its motion for summary judgment, presented evidence by way of affidavit testimony showing neither knowledge of a dangerous condition, knowledge that serious injury is the probable result of contact with the condition, nor failure to take action in the face of such knowledge. Keith Hansen, who was, as senior engineer for Kennecott, responsible for various Kennecott properties during the lease, including the time of Loosli's accident, testified by way of his affidavit:

> At the time of the [lease] Agreement's execution, I was not personally aware nor do I know of any person associated with Kennecott who had knowledge of any conditions at the Lark Sand Dunes which were dangerous enough that contact with those conditions probably would have resulted in serious injury. I do not believe there were any conditions which were dangerous enough that contact with those conditions probably would have resulted in serious injury at the Lark Sand Dunes and during the lease period, Kennecott never willfully withheld any warnings about that type of conditions [sic]
>
> . . . .

G.H. Keddington, Kennecott's manager of security since April 1986, testified by way of affidavit that "during the period of the Lease Agreement ... with the State, ... Kennecott did not patrol, supervise, or provide surveillance at the Lark Sand Dunes." Keddington further testified that "[d]uring the lease period, Kennecott did not respond to any accidents, vehicular or otherwise, at the Lark Sand Dunes," nor did Kennecott "provide any ambulance service to or any medical attention at the Lark Sand Dunes." Kennecott also submitted affidavits show-

ing that various State employees charged with managing the property did not know of any dangerous conditions on the property. Jay Christianson, Managing Park Officer at the time Kennecott and the State entered the lease, testified by way of his affidavit that "[p]rior to opening the Lark Sand Dunes, the State, with the assistance of volunteers, used equipment to clean up debris and to level out the terrain at various areas." He further testified that "[t]here was also an ongoing program to look for and to clean up debris." In contrast, Loosli merely asserted that Kennecott had knowledge of the property's condition and that it failed to guard or warn against such a dangerous condition. The affidavits presented by Loosli, which were stricken by the trial court on Kennecott's motion, merely attempted to establish that protruding timbers were scattered about the property and that, in the opinion of one of the affiants who is an accident reconstructionist, Loosli's accident was caused by the right rear wheel of the ATV striking an object on the ground. Even considering these affidavits, Loosli failed to present evidence sufficient to create a genuine issue of material fact as to Kennecott's knowledge or lack thereof. Without any knowledge, Kennecott could not have been willful or malicious as required by the Act.

The trial court therefore correctly granted summary judgment in Kennecott's favor. Other matters raised by the parties need not be considered in light of our decision. Accordingly, we affirm.

BENCH and JACKSON, JJ., concur.