# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 16, 2005          Decided October 25, 2005

No. 04-1274

KIDD COMMUNICATIONS,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

———

PARADISE BROADCASTING, INC.,
INTERVENOR

———

Appeal of an Order of the
Federal Communications Commission

———

Dan J. Alpert argued the cause and filed the briefs for appellant.

Pamela L. Smith, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the brief were Austin C. Schlick, Acting General Counsel at the time the brief was filed, and Daniel M. Armstrong, Associate General Counsel.

Erwin G. Krasnow was on the brief for intervenor.

Before: GARLAND, *Circuit Judge,* and SILBERMAN and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* SILBERMAN.

SILBERMAN, *Senior Circuit Judge*:

Kidd Communications appeals an FCC decision approving a transfer of Kidd's radio station license to Paradise Broadcasting, Inc., from whom Kidd originally purchased the station. The transfer was effected in two steps pursuant to a California state court order: first an involuntary assignment from Kidd to a trustee, and then the trustee's voluntary assignment to Paradise. Kidd challenges the Commission's decision as inconsistent with both an FCC regulation prohibiting a seller from retaining a reversionary interest in a station license and the Commission's general policy prohibiting a license holder from granting a security interest in a broadcast license, as opposed to in a station's physical assets. We think the FCC has inadequately explained why these related policies do not apply and failed to reconcile them with its competing policy of accommodating state court decisions. We therefore vacate and remand.

I

In 1995, Kidd acquired radio station KTHO(AM) in South Lake Tahoe, California from Paradise, with Commission approval. In connection with the transaction, Kidd executed a promissory note providing for monthly payments to Paradise and pledging to Paradise "all of the station assets, including but not limited to broadcasting and office equipment, goodwill, and receivables," but specifically excluding "any FCC licenses."

Soon thereafter, Kidd defaulted on the note, and Paradise sued Kidd in Orange County, California Superior Court. Kidd and Paradise settled the litigation by drafting a new promissory note, which was executed on July 15, 1997 and "supercede[d], replace[d], and [was] in lieu of the promissory note" executed in November 1995. The new note provided that "[i]n the event of a default which is not cured, both parties agree to act reasonably and in good faith to effect an orderly turnover of the *station* to Paradise." (Emphasis added).

Kidd again defaulted on its obligations to Paradise, who then initiated foreclosure proceedings under the July 1997 note. Following extensive litigation, a public auction of the station's real property was held, and Paradise was the successful bidder. Even though Paradise thereby acquired legal title to the station's land, transmission facilities, and towers, Kidd refused to surrender the property. Paradise then initiated an unlawful detainer action against Kidd in El Dorado County, California Superior Court.

While the unlawful detainer suit was pending, Paradise brought another action against Kidd in Orange County, California Superior Court, this time for breach of contract and specific performance under the new note. Paradise sought to recover the station's personal property, such as station equipment and furnishings, and to enforce Kidd's obligation under the new note "to act reasonably and in good faith to effect an orderly turnover of the station."

Paradise ultimately succeeded in both suits. Upon winning in the unlawful detainer action on October 16, 2000, Paradise took possession of the station's real property, and shortly thereafter the station went silent. Three months later, Paradise received a tentative decision in its favor in the Orange County

contract suit. The court found Kidd in default on the note and awarded possession of the station's personal property to Paradise. The court refused, however, to order Kidd to execute an application requesting that the FCC assign the station's license to Paradise because the note made no specific mention of the radio license. Paradise moved the court to reopen the proceedings on that issue, and the Orange County court issued a second decision, this time ordering Kidd to execute an application seeking transfer of the station's license to Paradise. The court noted that there had been conflicting testimony regarding the parties' intent under both the first and second notes, but concluded that the term "station" in the second note was at all times understood by the parties to "mean[] a going concern *including the FCC license*." (Emphasis added). When Kidd refused to execute the assignment application, the court appointed its clerk to act as trustee and execute the application on Kidd's behalf.

Kidd objected to the application to transfer the license to Paradise and argued that the assignment was predicated upon an impermissible reversionary interest in the station's license, in violation of 47 C.F.R. § 73.1150. In relevant part, that section provides:

> (a) In transferring a broadcast station, the licensee may retain no right of reversion of the license, no right to reassignment of the license in the future, and may not reserve the right to use the facilities of the station for any period whatsoever.
>
> (b) No license, renewal of license, assignment of license or transfer of control of a corporate licensee will be granted or authorized if there is a contract, arrangement or understanding, express or implied, pursuant to which, as consideration or partial consideration for the assignment or transfer, such

rights, as stated in paragraph (a) of this section, are retained.

47 C.F.R. § 73.1150.

The Commission's Mass Media Bureau rejected Kidd's argument and granted the trustee's application. Observing that the Commission "must reach a fair accommodation between [its] licensing jurisdiction [and] the power of state and local courts to adjudicate contract disputes," the Bureau concluded that the language in the second promissory note neither created "a mortgage or vested interest for [Paradise] in the KTHO(AM) license," nor "provide[d] for an automatic or irrevocable reversion in the event of default."

Kidd then sought full Commission review of the Bureau's decision, continuing to maintain principally that the assignment gave effect to an impermissible reversionary interest under 47 C.F.R. § 73.1150. Kidd claimed that the interest created by the second note was indistinguishable from those invalidated under § 73.1150 (or its predecessor) in *In re Application of Radio KDAN, Inc.*, 11 F.C.C.2d 934, *recon. denied*, 13 R.R.2d 100 (1968), *aff'd on procedural grounds sub nom. Hansen v. FCC*, 413 F.2d 374 (D.C. Cir. 1969), and *In re Applications of Kirk Merkley, Receiver*, 94 F.C.C.2d 829 (1983), *recon. denied*, 56 R.R.2d 413 (1984), *aff'd sub nom. Merkely v. FCC*, 776 F.2d 365 (D.C. Cir. 1985), and Kidd objected to the Bureau's decision ostensibly limiting § 73.1150 to situations where a right of reversion was "automatic" or "irrevocable."

The Commission denied Kidd's application for review, though its reasoning differed from that of the Bureau. *See In re Applications of Kidd Communications*, 19 F.C.C.R. 13,584 (2004). The Commission began its discussion by observing that § 73.1150, on its face, "applies exclusively to contracts executed

in conjunction with the transfer of a station," and not to contracts executed in conjunction with the settlement of litigation two years after such a transfer. *See id.* at 13,586–87. It noted that the predecessors to § 73.1150 were adopted as a response to sellers' reserving programming time on transferred stations as part of the consideration for the stations' sale — a practice clearly not at issue here. *See id.* at 13,587. The Commission then explained that the past applications of § 73.1150 were factually distinguishable from Kidd's case, as *Radio KDAN* and *Merkley* both "involved contracts executed in connection with the assignment of license or transfer of control of a station." *Id.* at 13,588. Finally, the Commission stressed that allowing transfer of the station to Paradise was consistent with the Commission's policies of accommodating state court decisions on matters of contract law and serving the public interest by returning the station to broadcast operations. The FCC observed that it had a "long-standing policy to accommodate [state] court decrees unless a public interest determination under the [Communications] Act compel[led] a different result," *id.* at 13,589, and that in this case, accommodation was in the public's best interest because "Kidd never indicated to the Commission that it would have been able to return the station to the air prior to forfeiture of the license," *id.* at 13,590.[1]

---

[1]According to the Commission, had the station not resumed operations by October 18, 2001, twelve months after going silent, its license would have expired by operation of law. *Kidd*, 19 F.C.C.R. at 13,590 & n.45; *see also* 47 U.S.C. § 312(g); 47 C.F.R. § 73.1740(c). At oral argument, however, the FCC conceded that Kidd could have applied for a waiver of this provision. *See* 47 U.S.C. § 312(g).

Kidd argues on appeal that the Commission's opinion "was arbitrary and capricious, and contrary to Commission precedent and its policy against allowing the issuance of either security interests or reversionary interests." As below, Kidd asserts that the plain language, history, and prior applications of § 73.1150 support reversal of the Commission's actions.[2]

II

The Commission argues that it is entitled to deference in interpreting its regulation, which is certainly reasonably read as referring to a prohibition of the retention of reversionary interests *at the time of transfer*. Under governing law, the Commission is entitled to significant deference in interpreting its own regulation — perhaps even more than an agency gets in interpreting a statute under *Chevron*. *See Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 584 (D.C. Cir. 1997); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945); *but see generally* John F. Manning, *Constitutional Structure and Judicial Deference to Agency Interpretations of Agency Rules*, 96 Colum. L. Rev. 612 (1996). So if that were all there was to this case, the FCC would easily prevail. But there is more.

The Commission did not dispute the California court's determination that the second promissory note created a security interest in both the station's physical assets *and* in the FCC license itself. This is problematic for the Commission, because

---

[2]Paradise, as intervenor, urges the court to affirm the Commission's decision because transfer of the station license to Kidd would amount to the assignment of a "bare license" — that is, a broadcast license divorced from any physical assets — against FCC policy.

in discussing § 73.1150, and in applying that regulation in prior cases, the Commission has consistently described the underlying policies behind the regulation in terms applicable to *any* security interest in a broadcast license.

Indeed, the Commission explained in this case that the predecessors to § 73.1150 were promulgated to ensure that "a station licensee is fully responsible for the conduct of the station and its operation in the public interest, and that such responsibility cannot be delegated by contract or otherwise." *Kidd*, 19 F.C.C.R. at 13,587. The Commission's control-based rationale is not uniquely applicable to reversionary interests acquired at the time of a station's transfer; logically it applies to the prohibition of a subsequently acquired reversionary interest or any type of security interest in a broadcast license.[3]

---

[3]The Commission attempted to draw a distinction between reversionary interests acquired at the time of transfer and later-acquired interests — reversionary or otherwise — by observing that, "under current Commission rules, a former licensee would not be prohibited from entering into various contractual arrangements subsequent to the sale of the station, such as an option to purchase the station at a future time, or a time brokerage agreement." *Kidd*, 19 F.C.C.R. at 13,587 n.27. Neither an option agreement, nor a time brokerage agreement, is a security interest, and, in any event, the Commission went on to undermine its distinction by confirming that control-related considerations are present even in the context of these lesser agreements. *See id.* ("In the event such arrangements could vest control in a party other than the current licensee, a petitioner or complainant may raise these concerns in the context of, *inter alia*, the assignment application, the station's license renewal application, or a formal complaint to the Commission's Enforcement Bureau.").

The FCC's prior decisions seem to acknowledge this point. In *Radio KDAN*, which did involve the Commission's disapproval of a seller's effort to retain a reversionary interest in a broadcast license, the Commission stated broadly that "[t]he extraordinary notion that a station license issued by this Commission is a mortgageable chattel in the ordinary commercial sense is untenable." *Radio KDAN*, 11 F.C.C.2d at 934 n.1. Then in *Merkley*, the Commission, rejecting a Utah state court's effort to enforce a reversionary provision in a buyer's contract, said that the reversionary interest was unenforceable because "no right of reversion can attach to a broadcast station license, and the license, as distinguished from a station's physical assets, is not subject to a mortgage, security interest, or lien." *Merkley*, 56 R.R.2d at 416. The Commission added that:

> a Commission license is not an owned asset or property right. A security interest in the assets of the broadcast station does not effect a transfer or assignment of the broadcast license. Further, creditors must not equate the license with the buildings and the equipment to which the licensee has acquired title. Credit cannot be extended in reliance upon the license as an asset from which the licensee's obligations may be satisfied.

*Id.* (citations omitted).

An administrative agency can, of course, make legal-policy through rulemaking or by adjudication. *See SEC v. Chenery Corp.*, 332 U.S. 194, 202–03 (1947). When an agency does so by adjudication, because it is a policymaking institution unlike a court, its dicta can represent an articulation of its policy, to which it must adhere or adequately explain deviations. Thus, even were the Commission's discussions of the nonmortgageable nature of a broadcast license dicta, they still presumably would reflect Commission policy. *Cf. Goodman v.*

*FCC*, 182 F.3d 987, 994 (D.C. Cir. 1999) ("[T]he nature of adjudication is that similarly situated non-parties may be affected by the policy or precedent applied, or even merely announced in dicta, to those before the tribunal."). In these instances, however, the Commission's discussions of its policy were more than dicta because they actually articulated reasons for the rule.[4]

The Commission suggested that its deviation from its policy was in order to accommodate the California court. We note that in *Merkley*, it did not defer to the Utah court, but in any event the Commission is not obliged to accommodate a state court's decision that is contrary to Commission policy. *See Kidd*, 19 F.C.C.R. at 13,589; *see also Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 132 (1945). The FCC relied on a case involving two Puerto Rico radio stations, in which it accommodated a local court order directing a transfer of the station licenses based on "equity," *see In re: Applications of Arecibo Radio Corp.*, 101 F.C.C.2d 545, 546–47 (1985); but that case did not involve any security interest in the licenses and thus did not implicate the policies at issue here. The Commission also stated that accommodation of the California court's decision was appropriate because that court, like the court in *Arecibo*, addressed only the contractual issues and left the public interest determinations to the Commission. *Kidd*, 19 F.C.C.R. at 13,589–90. This seems to beg the question, since the FCC's

---

[4]That is not to say that the Commission's discussions of its policy that underlies the rule constitute an authoritative interpretation of § 73.1150 that would prevent the Commission from giving it another interpretation without notice and comment. *See Paralyzed Veterans*, 117 F.3d at 587–88.

articulation of the public interest includes its policy against security interests in station licenses.

Finally, the Commission contended that the assignment to Paradise served the public interest by allowing the station to resume operations in a timely fashion and by reuniting the station's license with its broadcast facilities. *See id.* at 13,590. This explanation is similarly inadequate. The FCC has never indicated that this consideration could override its policy against security interests, and if it did, it would create quite a loophole. Commission approval of a license transfer would automatically follow state-court foreclosure on a station's physical assets, and a station license and its physical assets would become inseparable.

To be sure, state courts faced with contract disputes involving conflicting claims to broadcast stations realize that the physical assets are worthless without the licenses, and so are inclined to fashion remedial orders that treat the two as a bundle. That understandable inclination, however, runs afoul of the Commission's insistence that a broadcast license be treated distinctly — its transfer depends on the Commission's determination of the public interest. Indeed, the Communications Act supports this distinction. The Act allows for the licensing of radio frequencies merely "to provide for the use of such channels, but not the ownership thereof." 47 U.S.C. § 301. Station licenses vest limited rights in licensees, *see id.* §§ 304, 309(h)(1), and assignment rights are limited, *see id.* §§ 309(h)(2), 310(d). Under § 310(d), "[n]o . . . station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, . . . to any person except upon application to the Commission."

We recognize that the Commission may see itself in an awkward position, but that does not excuse its failure to explain adequately how it will reconcile state commercial and contract interests with its federal policies.

\* \* \*

Accordingly, we vacate the Commission's decision and remand to the Commission for further proceedings.