# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 11, 2017      Decided February 16, 2018

No. 16-1248

EDWARD R. STOLZ, II, D/B/A ROYCE INTERNATIONAL
BROADCASTING COMPANY,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

ENTERCOM COMMUNICATIONS CORP. AND ENTERCOM
LICENSE, LLC,
INTERVENORS

———

On Appeal From Orders of the
Federal Communications Commission

———

*Dennis J. Kelly* argued the cause and filed the briefs for appellant.

*William J. Scher*, Counsel, Federal Communications Commission, argued the cause for appellee. With him on the brief were *Howard J. Symons*, General Counsel at the time the brief was filed, *David M. Gossett*, Deputy General Counsel, and *Richard K. Welch*, Deputy Associate General Counsel. *Jacob M. Lewis*, Associate General Counsel, entered an

appearance.

*Michael E. Dash, Jr.*, *Carrie A. Ward*, *Dennis P. Corbett*, and *Jessica DeSimone Gyllstrom* were on the brief for intervenors Entercom Communications Corp. and Entercom License, LLC, in support of appellee.

Before: MILLETT, *Circuit Judge*, and EDWARDS and WILLIAMS, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*: Edward Stolz agreed to sell a radio station he owned to Entercom Communications Corporation and, upon approval by the Federal Communications Commission ("FCC"), to transfer the station's broadcast license to Entercom. Implementation of the agreement soon broke down, and Stolz and Entercom have spent the ensuing two decades clashing before the FCC and state and federal courts. This long-running dispute should draw closer to a conclusion today as we deny Stolz's appeal and dismiss as moot his central claim challenging Entercom's legal eligibility to acquire the station.

**I**

**A**

Congress invested the FCC with exclusive authority to grant, deny, and approve the transfer of broadcast licenses to operate radio stations. 47 U.S.C. §§ 301, 303, 307–310. As a result, when a broadcast station owner wants to transfer ownership of a station to a third party, the FCC must approve the assignment of the station's broadcast license to the new owner. *Id.* § 310(d). The FCC may approve assignments only "upon finding * * * that the public interest, convenience, and necessity will be served thereby." 47 U.S.C. § 310(d). That

public interest includes "promoting diversity of program and service viewpoints" and "preventing undue concentration of economic power." *FCC v. National Citizens Committee for Broadcasting*, 436 U.S. 775, 780 (1978).

To that end, the FCC limits the number of radio stations that a single entity can own within a local market. 47 C.F.R. § 73.3555(a). As relevant here, in a market with 45 or more radio stations, a single entity can only be licensed to operate up to "8 commercial radio stations in total and not more than 5 commercial stations in the same service (AM or FM)." *Id.* § 73.3555(a)(1)(i). In a market that contains 30 to 44 radio stations, a single entity may not hold licenses for "more than 7 commercial radio stations in total and not more than 4 commercial stations in the same service (AM or FM)." *Id.* § 73.3555(a)(1)(ii).

In 2002, the FCC completed a comprehensive review of its media ownership rules. *See* IN THE MATTER OF 2002 BIENNIAL REGULATORY REVIEW, Report and Order, 18 FCC Rcd. 13620 (2003) ("*2002 Order*"). Among other things, the *2002 Order* retained the FCC's prior numerical limits on radio station ownership, but changed how the FCC would determine the size of a local market, and thus what ownership limits would apply to a given entity within that market. *Id.* at 13724 ¶ 273-274. Those same rules also apply to the assignment or transfer of broadcast licenses. *Id.* at 13724 ¶ 273 n.572.

The *2002 Order* included a grandfathering provision to prevent existing license holders from having to "divest their current interests in stations * * * to come into compliance with the new ownership rules." 18 FCC Rcd. at 13808 ¶ 484. The grandfathering provision also established "processing guidelines" to "govern pending and new commercial broadcast applications for the assignment or transfer" of radio licenses "as of the adoption date of this *Order*." *Id.* at 13813 ¶ 498. Pending assignment applications that had not yet been "act[ed]

on" by the "Commission prior to the adoption date of the *Order*" were made subject to the *2002 Order*'s new market definitions. *Id.* at 13814 ¶ 498.

**B**

Appellant Edward R. Stolz, II, who does business under the name Royce International Broadcasting Company, owned radio station KUDL (FM) in Sacramento, California and held an FCC broadcast license for the station. This regulatory saga starts in February 1996 when Stolz signed a letter of intent to sell the radio station's assets and to transfer the FCC license to Entercom.[1] Business relations between the two soured, however, before the sale and license transfer were completed.

Entercom sued Royce International in California state court seeking to enforce the agreement. In April 2002, the California Superior Court ordered specific performance of the radio station's sale and directed Stolz to sign a license transfer application to be submitted to the FCC.

In November 2002, Entercom filed the necessary license transfer application with the FCC. Stolz did not sign it though. Instead, Stolz filed a petition with the FCC asking it to deny the application. Stolz argued that the FCC's methodology for measuring the size of the Sacramento local media market was flawed and that, if an accurate standard were employed, market concentration rules would bar Entercom from acquiring any more radio stations in that market (including, specifically, KUDL).

In May 2003, the FCC's Media Bureau granted the license application and assigned the KUDL (FM) broadcast license to Entercom, finding that the transfer was permissible

---

[1] Both Entercom Communications and its wholly owned subsidiary Entercom License are intervenors in this case. We refer to the two entities collectively as "Entercom."

and in the public interest. *Letter to Andrew S. Kersting, Esq., and Brian M. Madden, Esq.,* FCC File No. BALH-20021120ACE, Ref. 1800B3-BSH (May 12, 2003). Under FCC regulations, the Media Bureau's decision was not the last agency word. FCC regulations allowed Stolz to seek review of the Bureau's decision by the FCC itself. *See* 47 C.F.R. § 1.115.

Within a month of the Media Bureau's decision, the FCC adopted the *2002 Order*. The *Order* redefined the Sacramento local market along the lines for which Stolz had been arguing. As a result, if the *2002 Order* were applied to Entercom's license application, the transfer would have to be denied because Entercom already held the maximum number of broadcast licenses permitted within the Sacramento market. Stolz promptly petitioned the Media Bureau for reconsideration, arguing that the transfer application was still "pending" and thus subject to the *2002 Order*'s new local-market definition. After a two-year delay, the Bureau denied reconsideration.

Stolz then sought review by the full FCC. The FCC inexplicably delayed ten years before finally affirming the Bureau's decision in September 2015. Stolz sought reconsideration by the FCC, arguing that this court's intervening decision in *Kidd Communications v. FCC*, 427 F.3d 1 (D.C. Cir. 2005), rendered the involuntary transfer unlawful. The full FCC denied the petition for reconsideration, reasoning that Stolz should have raised his arguments under *Kidd* earlier by seeking to reopen briefing on his petition to the full FCC.

## II

### A

We have exclusive jurisdiction over appeals from FCC decisions granting or denying the assignment of a radio broadcast license. 47 U.S.C. § 402(b)(3) & (b)(6). We dismiss Stolz's appeal in part as moot and deny it in part.

Stolz's central argument on appeal is that the FCC should have applied the *2002 Order*'s new local-market definition to Entercom's license transfer application because this case was still pending within the administrative process at the time the *2002 Order* took effect. The parties do not dispute that, had the *2002 Order*'s market definition been applied, Entercom's application would have been denied because it would at the time have owned too many radio stations within the Sacramento market. Under the regulatory scheme that predated the *2002 Order*, by contrast, Entercom could obtain the KUDL license without exceeding the local-market ownership rule. *See* 47 C.F.R. § 73.3555(a)(1)(ii) (2001).

As events have unfolded, we need not untangle the less-than-pellucid definition of "pending" administrative actions to determine whether the grandfather clause in the *2002 Order* applies to this license transfer application.[2] That is because,

---

[2] On the one hand, the *2002 Order*'s grandfather clause directs that parties seeking license assignments must be in compliance with the new rules at the time the assignment application is "filed." 18 FCC Rcd. at 13809 ¶ 487. But the *2002 Order* elsewhere states that the new rules apply to applications that have not yet been "act[ed] on" by the Commission by the date of the *2002 Order*'s adoption. *Id.* at 13814 ¶ 498. Elsewhere the FCC has said that the new rules do not apply to "a transaction" that was "consummated" prior to the adoption of the *2002 Order*. *In the Matter of Royce Int'l Broad. Co., Assignor and Entercom Commc'ns*

during the pendency of this case, Entercom relinquished its broadcast license for and ceased to operate one of its preexisting FM radio stations in the Sacramento market. *Entercom License, LLC*, FCC 17M-09, 2017 WL 1088491, at *1 (March 16, 2017) ("On February 8, 2017, Entercom forwarded the station license for KDND(FM) * * * and other KDND instruments of authorization to the Commission for cancellation[.]"). With that license returned to the FCC, Entercom now only operates four FM radio stations and one AM radio station in the Sacramento market. Transcript of Oral Argument at 8-9, *Stolz v. FCC*, No. 16-1248 (D.C. Cir. argued Sept. 11, 2017). That means that even under the *2002 Order*'s new local-market rule, Entercom is eligible to acquire KUDL's license without running afoul of market concentration limitations. Both parties conceded this point at oral argument. *Id.* at 9, 10, 19. Accordingly, that portion of Stolz's appeal is dismissed as moot.

**B**

Stolz separately argues that the FCC's approval of the transfer is invalid under our decision in *Kidd Communications v. FCC*, *supra*. Stolz reads that decision as broadly barring the involuntary transfers of licenses that are an outgrowth of state-court litigation. While we disagree with Stolz's reading of *Kidd*, we are also unpersuaded by the FCC's invocation of a procedural bar to even addressing intervening circuit precedent.

Our decision in *Kidd*—a precedential ruling that Stolz believes proscribes the FCC's decision in his case—came down *after* briefing had been completed on Stolz's application for review to the FCC challenging the Media Bureau's decision. *See* 47 C.F.R. § 1.115(d). There of course was no

---

*Corp., Assignee*, 30 FCC Rcd. 10556, 10557 ¶ 4 (Sept. 17, 2015) (citing *2002 Order*, 18 FCC Rcd. at 13808).

possible way for Stolz to have included an argument relying on *Kidd* before that precedent actually intervened.

The FCC disputes none of that. Instead, the FCC argues that Stolz's argument about *Kidd* should have been presented to the FCC through some supplemental filing rather than waiting until after the decision issued and then seeking reconsideration. Stolz's failure to do so, the FCC insists, forever forfeited his reliance on intervening circuit precedent.

That is wrong. We have found no FCC rule permitting, let alone requiring, supplemental filings after closure of the pleading cycle. The FCC cites no such rule. Nor does anything in the FCC's procedural regulations put claimants on fair notice that failure to file a nowhere-mentioned-in-the-rules supplemental document will procedurally forfeit a claim. Worse still, what the FCC's regulations do say is that a petition for reconsideration is exactly the place in which to raise "events which have occurred or circumstances which have changed since the last opportunity to present such matters to the Commissioner." 47 C.F.R. § 1.106(b)(2)(i); *see also* 47 C.F.R. § 1.115(c) ("[N]ew questions of fact or law may be presented to the designated authority in a petition for reconsideration.").

The FCC, for its part, cites to a couple of footnotes in prior decisions and a 1979 order to demonstrate that, on occasion, the FCC has entertained such supplemental filings. That misses the point. The issue here is not whether the FCC could have entertained such a filing if Stolz had thought to attempt it. Rather, the issue is whether the FCC gave Stolz fair notice that he had to plead for an exercise of discretion under an *unwritten* rule on pain of forfeiting a claim that the *written* rules expressly say could be presented later in a petition for reconsideration. If an agency wants a procedural requirement to have the type of claim-foreclosing consequence the FCC attached here, it needs to be explicit about the rule and upfront

about consequences of noncompliance. The FCC may not, like Nero, lay out its procedural requirements in a way that makes them "harder to read and easier to transgress." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1179 (1989); *see NetworkIP, LLC v. FCC*, 548 F.3d 116, 122-123 (D.C. Cir. 2008) ("'[T]raditional concepts of due process * * * preclude an agency from penalizing a private party for violating a rule without first providing adequate notice of the substance of the rule.'") (quoting *Satellite Broadcasting Co. v. FCC*, 824 F.2d 1, 3 (D.C. Cir. 1987)).

It also bears remembering that the reason Stolz waited ten years to raise his *Kidd* argument is that it inexplicably took the FCC *ten years* to issue its barely four-page decision on Stolz's application for review. Of course Stolz could not file a petition for *re*consideration until after the FCC first considered and decided his application for review. In other words, this is hardly the case for the FCC to be pointing a non-jurisdictional timeliness finger at others.

While Stolz wins that procedural battle, he loses the war. His reliance on *Kidd* substantially overreads that case. To be sure, in *Kidd* as in this case, a state court ordered the involuntary filing with the FCC of an application for assignment of a broadcast license. *Kidd*, 427 F.3d at 3. But the similarities end there. The problem in *Kidd* was that, once that application was filed, the FCC woodenly granted the assignment application (i) without ensuring that transfer was in the "public interest," as federal law requires, 47 U.S.C. § 310(d), and (ii) notwithstanding that the transfer would enforce the very type of reversionary interest that FCC regulations expressly prohibit. *Kidd*, 427 F.3d at 5–6. We held that the FCC's asserted desire "to accommodate the [state] court [order]" for its own sake was unlawful. "[T]he Commission is not obliged to accommodate a state court's decision that is contrary to Commission policy * * * [and] the public interest determinations [are left] to the Commission."

*Id.* at 6.

Nothing like that happened here. Contrary to Stolz's argument (Br. 23), the dispute in this matter did not involve a transfer that would have enforced a reversionary interest prohibited by FCC regulations, as was the case in *Kidd*. Furthermore, the California Superior Court did not order the FCC to grant the transfer application; the court only ordered Stolz to sign the application with the FCC as his agreement with Entercom required. The disposition of that application was left within the exclusive province of the FCC. Nor did the FCC ground its decision granting the transfer application on the state court order, as it had in *Kidd*, 427 F.3d at 6. Instead, just as *Kidd* requires, the FCC rested its decision entirely on federal law, determining that "the public interest, convenience, and necessity will be served thereby." *See* 47 U.S.C. § 310(d). And in so doing, the FCC's decision did not contravene any established policy like the ban on reversionary interests that the FCC blinked away in *Kidd*.

* * * * *

Because Stolz's challenge to the FCC's application of the pre-*2002 Order*'s local-market definition is moot and his remaining challenge to the FCC decision lacks merit, Stolz's appeal is dismissed in part and denied in part.

*So ordered.*