J-A10020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NEWPORT INVESTMENT GROUP, LLC, ASSIGNEE OF LUXURY ASSET LENDING, LLC | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PHILADELPHIA TELEVISION NETWORK, INC. AND RICHARD GLANTON | : | No. 1954 EDA 2022 |
| | : | |
| APPEAL OF: PHILADELPHIA TELEVISION NETWORK, INC. | : | |

Appeal from the Order Entered June 22, 2022
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 180500074

BEFORE: PANELLA, P.J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED SEPTEMBER 7, 2023**

Philadelphia Television Network, Inc. ("PTNI") appeals from the order denying its motion to enforce the orders vacating receivership and requiring restoration of assets. The factual heart of PTNI's appeal is a variation of the "Nigerian Prince scam."[1] Unfortunately, one of the victims of the scam, Richard

---

[*] Former Justice specially assigned to the Superior Court.

[1] In this scam, a scammer "poses as a person of wealth and position who needs to get a huge sum of money out of their country and urgently requests your assistance …. In the version that became ubiquitous online in the 1990s, the supposed benefactor is a Nigerian royal, government official or business

*(Footnote Continued Next Page)*

Glanton, used his position as PTNI's largest shareholder to use PTNI's assets as collateral for a loan from Luxury Asset Lending, LLC to finance his payments to the scammers. After Glanton defaulted on the loans, Luxury Asset Lending was temporarily partially successful in its attempt to foreclose on PTNI's broadcast assets; a Pennsylvania court erroneously transferred PTNI's assets to a court-appointed receiver before quickly realizing its mistake and revoking the receivership. The only question before us now is whether Pennsylvania state courts have the power to order the return of those assets to PTNI and direct the receiver to initiate appropriate proceedings before the Federal Communications Commission ("FCC") to seek transfer of the broadcast license back to PTNI. We hold that Pennsylvania courts have both powers, albeit with certain limits. We therefore affirm in part, reverse in part, and remand for the trial court to take appropriate action consistent with this memorandum.

A review of PTNI's brief and the trial court's opinion indicates that the following factual and procedural history relating to a foreign judgment entered in California and a vacated receivership in Pennsylvania is uncontested for

---

executive whose fortune is hostage to war, corruption, or political unrest. This desperate personage needs only … a relatively small advance payment (to cover taxes, bank fees or well-placed bribes) …. For your trouble, some of their millions will become your millions." Nigerian Scams, https://www.aarp.org/money/scams-fraud/info-2019/nigerian.html, last retrieved 8/15/23.

purposes of this appeal.[2] Relevant herein, PTNI owned WEFG-LD, a low power television broadcast station in Philadelphia, and related leases for equipment and antenna facilities. PTNI also held an FCC license for the station to produce and disseminate broadcasts.

In 2015, Curt Weldon, a former United States Congressman from Pennsylvania, approached Glanton about the chance to manage a former Libyan oil minister's $350 million wealth fund.[3] After several months, Glanton informed Weldon he thought the deal was legitimate and suggested they travel to Ghana to take custody of the funds. Upon arriving in Ghana, Glanton and Weldon met with the potential client's representative, Kweku Amedume Thorpe ("Kweku"). Glanton and Weldon learned Standard Express Security was holding the funds under the supervision of the Ghanaian Interior Ministry. To release the funds, Glanton and Weldon agreed to wire approximately $45,000 in "late storage fees" to Standard Express.

Subsequently, Glanton, Weldon, Kweku, and other representatives, including a banker, Chris Obareki, met at the Standard Express offices to inspect 3 boxes each containing over $100 million in $100 bills. The money

---

[2] Newport Investment Group, LLC, an assignee of Luxury Asset Lending, as Appellee, declined to file a brief in this appeal.

[3] The California Court of Appeals has set forth an extensive factual recitation of the underlying scam and the "Marquess of Queensbury fisticuffs" in this case. **Luxury Asset Lending, LLC v. Philadelphia Television Network, Inc.**, 270 Cal. Rptr. 3d 724, 726–33 (Cal. Ct. App. 2020); **see also In re Glanton**, 2023 WL 4411849, at *3-4 (Bankr. D.N.J. filed July 7, 2023).

was then taken to ECO Bank, which reported the money was real and totaled over $360 million; however, the bank indicated that each of the bills had an invisible insignia in Arabic that would need to be removed before the funds could be deposited. The removal process would cost $2.4 million up front, with Kweku and Obareki contributing about $900,000, and Glanton and Weldon contributing the remaining money.

After the money had been raised, Kweku and Obareki advised Glanton and Weldon that the Central Bank of Ghana had seized the $360 million, and they had to pay a $3.6 million fine to release the money. Kweku and Obareki indicated that if Glanton and Weldon paid approximately $800,000 of the fine, they would pay the remainder. However, Kweku and Obareki did not produce any money, causing Glanton and Weldon to provide additional funds. Ultimately, Kweku and Obareki reneged on the deal, and it is unclear what happened to the money contributed by Glanton and Weldon.

Significantly, to acquire part of the money needed to fund their payments, Glanton and Weldon obtained loans totaling $530,000 from Brian Roche and his affiliate, Luxury Asset Lending. By June 2017, Glanton and Weldon had already defaulted on loans totaling $490,000. They then sought an additional $40,000, which Roche and Luxury Asset Lending agreed to loan them if they would pay back an additional $3.3 million. Glanton and Weldon acquiesced to the demand.

Importantly, without informing anyone at PTNI, Glanton obligated PTNI on the loans and pledged PTNI's company assets and his PTNI shares as collateral to secure the loans. After Glanton and PTNI defaulted on all the loans, Luxury Asset Lending filed a complaint against PTNI, Glanton, and Weldon in Orange County Superior Court, alleging various claims and seeking $3.79 million in damages. After serving Weldon and Glanton individually, as well as serving Glanton as a representative of PTNI, Luxury Asset Lending filed for entry of default against all defendants. The Orange County court ultimately entered default judgment against PTNI and Glanton in the amount of $3,897,919.22.[4]

On July 13, 2017, Glanton filed for Chapter 11 bankruptcy protection. Subsequently, Glanton filed a motion to allow voluntary dismissal of his Chapter 11 case, noting that he had reached a settlement with Luxury Asset Lending. The bankruptcy court granted Glanton's motion in April 2018.[5] On April 27, 2018, Luxury Asset Lending assigned the $3.897 million judgment against PTNI to Newport, a company owned by Roche. On April 30, 2018, Newport filed a stipulation seeking an order assigning Glanton's PTNI shares,

---

[4] Luxury Asset Lending also obtained a judgment against Weldon for $295,104.70. Weldon filed a motion to set aside the default judgment, arguing that Luxury Asset Lending and Roche facilitated the Ghana deal and that Roche had admitted the transaction was a scam. Weldon later reached a settlement with Luxury Asset Lending and is not involved in this case.

[5] Glanton filed a second petition for Chapter 11 bankruptcy protection on February 9, 2022.

and ownership and control of PTNI and its assets, including the FCC license, to Newport. That same day, the California Superior Court ordered Glanton to assign his stock and, upon FCC approval, the license and assets of WEFG-LD to Newport.

On May 4, 2018, Newport filed an action in the Philadelphia Court of Common Pleas to domesticate the California judgment against PTNI and Glanton. Newport again filed a stipulation seeking an order assigning Glanton's PTNI shares, and ownership and control of PTNI and its assets, including the FCC license to Newport. On May 11, 2018, the trial court entered an assignment order, similar to the California Superior Court order, directing, *inter alia*, Glanton to transfer his shares in PTNI to Newport, Glanton and PTNI to assign control, possession, and ownership of PTNI, including all assets, FCC license, furniture, records, and equipment to Newport.

On June 5, 2018, PTNI filed a request for dismissal with the FCC, asserting that Glanton did not have authorization to assign the FCC license. On November 13, 2018, the FCC granted PTNI's request, noting that although it accommodates state court decisions, the broadcast license could not be subject to foreclosure by a lender under the Federal Communications Act and FCC policy. Nevertheless, the FCC noted that if a court-appointed trustee or receiver authorized the sale of a license, the FCC could approve such a transfer of the license.

As a result, on November 19, 2018, Newport filed an emergency petition[6] for the appointment of a receiver to control PTNI's assets, including the FCC license.[7] The petition included a response date of December 10, 2018. However, on November 19, 2018, the trial court granted the petition without a hearing, and appointed Joseph Bernstein of Spina Company, LLC as receiver. The trial court authorized Bernstein to file an application with the FCC to effectuate transfer of the license to him and to take control of PTNI's non-licensed assets, including the tower broadcasting equipment, tower lease, station records, and programming files. Bernstein immediately filed an application with the FCC to assign PTNI's FCC license to him pursuant to the order appointing him as receiver. The FCC granted the application on November 28, 2018. PTNI filed a petition to strike, vacate, open, or stay the foreign default judgment and reconsider, stay, or vacate the appointment of

---

[6] The trial court notes that this petition, although titled "Emergency," was "filed in normal course of business and was not filed as an emergency." Trial Court Opinion, 9/13/22, at 1 n.1.

[7] In Pennsylvania, the appointment of a receiver "is not to be undertaken lightly," and the decision to appoint and/or terminate the receiver "is within the sound discretion of the trial court." *Abrams v. Uchitel*, 806 A.2d 1, 8 (Pa. Super. 2002); *see also Mayhue v. Mayhue*, 485 A.2d 494, 497 (Pa. Super. 1984) (noting that the appointment of a receiver is a harsh remedy that is typically imposed only as a last resort).

receiver order.[8] The trial court granted the stay and denied the petition to strike the judgment.

PTNI and Newport both appealed.[9] This Court subsequently entered an order remanding the matter for a hearing on Newport's petition for appointment of a receiver and allowing PTNI to renew its petition to strike, vacate, or open the judgment. **See** Order, 5/24/19, at 1-2 (*per curiam*). PTNI filed another petition to strike, vacate, or open the foreign judgment. On October 3, 2019, the trial court denied PTNI's petition to strike or vacate the foreign judgment. On October 24, 2019, the trial court, following a hearing,

_____

[8] On December 21, 2018, PTNI filed a petition for reconsideration with the FCC. Bernstein and Newport opposed the petition, arguing, in part, that Pennsylvania courts retain jurisdiction to determine the scope of the receiver's authority and power. PTNI has filed numerous supplements to its petition. According to PTNI, its petition for reconsideration is still pending before the FCC. **See** Appellant's Brief at 12, 20-21; **see also** FCC Letter to Senator Pat Toomey, 11/30/20, at 1 (unnumbered) (noting that the FCC would not act on pending pleadings and applications until issue courts resolve receivership issue).

[9] On April 5, 2019, PTNI also filed a motion to vacate and set aside the default judgment in California. The California Superior Court denied the motion. However, on October 29, 2020, the California Court of Appeals reversed the order and remanded with instructions for the California Superior Court to vacate the default judgment and assignment order against PTNI. **See Luxury Asset Lending, LLC**, 270 Cal. Rptr. 3d at 739; **see also In re Glanton**, 2023 WL 4411849, at *5 (noting that PTNI was the only party moving to vacate the default and rejecting Glanton's argument that the judgment was vacated as to him as well). The California Superior Court subsequently vacated the judgment and assignment order as to PTNI. Nonetheless, we note that Newport filed another complaint against PTNI in California, arising out of a new assignment from Luxury Asset Lending and claims related to its loan documents with PTNI.

denied Newport's petition for appointment of a receiver, and vacated its November 19, 2018 order appointing Bernstein as receiver. Specifically, the trial court found that the prior order did not comply with 15 Pa.C.S.A. § 1985 ("Liquidating receiver") and failed to post the required bond and security and failed to limit the temporary receivership to a fixed period pursuant to Pa.R.C.P. 1533 ("Special Relief. Receivers"). Additionally, the trial court found that the FCC prohibits such a temporary receivership "as it seeks to create a security interest in [PTNI's] FCC license. Federal law prohibits the foreclosure of a security interest in an FCC license." Order, 10/24/19, at 1.

Due to the vacatur of the receivership order, Bernstein filed an application to assign the FCC license to PTNI on November 1, 2019. However, on November 4, 2019, Bernstein filed a request to withdraw and cancel the assignment of the FCC license to PTNI.[10] Bernstein's application is also pending before the FCC. *See* FCC Letter to Senator Pat Toomey, at 1 (unnumbered) ("At this time, an application for the reassignment of license from Bernstein to PTNI is pending before the [FCC].").

---

[10] PTNI indicates that Bernstein withdrew the application because Newport and Roche had threatened him with legal action if he did so and Bernstein also sought the dismissal of an ethics complaint filed by a PTNI shareholder against Bernstein's accounting firm in exchange for filing the application. *See* Motion to Enforce Orders Vacating Receivership and Requiring Restoration of Assets, 5/19/22, at 8; Affidavit of PTNI's FCC attorney Jeffrey Timmons, 5/17/22, at ¶ 16.

Newport appealed from the October 24, 2019 order, and PTNI appealed from the October 3, 2019 order. Subsequently, PTNI filed a motion to quash or dismiss Newport's appeal for failure to file a brief and vacate and remand its appeal due to the California Court of Appeals' vacatur of the underlying judgment and assignment order. On April 13, 2021, this Court entered an order dismissing Newport's appeal, vacating the trial court's October 3, 2019 order, and remanding the matter to the trial court for a determination of whether the foreign judgment and assignment order entered in Pennsylvania should be vacated. **See** Order, 4/13/21, at 1-2 (*per curiam*). Further, in the order, this Court stated that on remand, PTNI "may seek relief in the trial court for return of property, accounts, license rights, and for costs and attorneys' fees." **Id.** at 2. Subsequently, on June 23, 2021, the trial court struck the judgment and vacated the assignment order. Neither party appealed this order.

Notably, despite his removal as receiver, Bernstein filed a request to toll the station's construction permit expiration for 660 days with the FCC pending final action on the ownership of the station.[11] On August 11, 2021, the FCC

_____

[11] On March 2, 2021, Bernstein filed a pleading with the FCC, requesting a decision on PTNI's petition for reconsideration. Subsequently, on May 10, 2021, Bernstein's counsel sent a letter indicating that Bernstein would withdraw his opposition to PTNI's petition for reconsideration before the FCC and would request that the FCC reinstate the FCC license to PTNI. Nevertheless, it is unclear whether Bernstein has filed any further petitions before the FCC.

granted Bernstein's request, finding that until the ownership is resolved, no further action can be taken on the construction. The FCC further noted that "Bernstein maintains that he remains the licensee of WEFG-LD with legal obligations and liabilities to third parties to preserve WEFG-LD's assets, but no longer with court-appointed authority to legally take actions regarding the Station." FCC Letter (Request for Tolling), 8/11/21, at 2 (unnumbered).

On May 19, 2022, PTNI filed a motion to enforce orders vacating receivership and requiring restoration of assets, seeking to enforce the vacatur of the receivership order and restore its pre-receivership ownership and control of assets, including the FCC license. Specifically, PTNI sought, *inter alia*, (1) a statement for the FCC that there is no receivership or judgment against PTNI; (2) restoration of all property, assets, and license rights; (3) that Bernstein and Newport make all necessary filings before the FCC to transfer the license to PTNI within five days; and (4) that Bernstein submit any required FCC filings at his expense while the transfer is pending and that Bernstein and Newport stop interfering with the return of license process. Newport filed an answer opposing PTNI's motion. Newport did not dispute the vacatur of the receivership order, assignment order, or the foreign judgment, but indicated that the contractual assignment of Glanton's PTNI shares for the benefit of Newport still exists. Ultimately, the trial court denied PTNI's motion. PTNI timely appealed.

On appeal, PTNI raises the following questions for our review:

J-A10020-23

> 1. Does the trial court have power and jurisdiction, including by this Court's April 13, 2021 remand order, to enforce the unwinding and return of PTNI's assets, after vacating the receivership, Judgment and Transfer and Assignment Order?
>
> 2. Was [PTNI's] motion within the trial court's judicial power because it did not interfere with FCC proceedings?
>
> 3. Should relief have been granted to restore assets, and remedy harm from the vacated receivership and judgment?

Appellant's Brief at 3.

We will address PTNI's claims together as they all address whether the trial court had authority to restore the FCC license to PTNI. PTNI contends that following the order vacating the appointment of a receiver, the trial court had authority to restore its property and remedy the harms of the receivership. *See id.* at 28-31, 42. PTNI emphasizes that this Court, pursuant to its April 13, 2021 order, indicated that PTNI could seek relief in the trial court for the return of property and license rights. *See* Appellant's Brief at 28, 31. PTNI argues that contrary to the trial court's finding, its request for relief does not interfere with FCC proceedings. *See id.* at 31. PTNI claims that the FCC's stated position in this case is to defer to the state action. *See id.* at 31, 32-33, 34-35, 41; *see also id.* at 33 (highlighting that in its letter to then-Senator Pat Toomey, the FCC stated that "it was holding back from resolving Bernstein's and Newport's opposition to returning the License to PTNI, out of deference to and waiting upon the courts to 'resolve the receivership.'" (citation omitted)). PTNI points out that it is not requesting that the trial court determine any licensing issues, but rather resolve the receivership. *See id.* at

34, 42; *see also id.* at 35 (arguing that "[t]he FCC's jurisdiction is over the suitability of the licensee, not over the property rights involved between the licensee and others" (citation omitted)). PTNI argues that Pennsylvania courts have the power to enforce its orders, including to require or prohibit actions before the FCC. *See id.* at 34-37. PTNI also asserts that the FCC's August 11, 2021 letter that tolled deadlines for a construction permit does not enshrine Bernstein's role as the licensee, but instead indicated that it was postponing deadlines because of the state action. *See id.* at 38-40.

PTNI claims that the protracted history of this case, including the fact that more than three years have passed since the receivership was vacated while Bernstein still holds the FCC license, establishes the court must provide relief on this matter. *See id.* at 42-43; *see also id.* at 40 (noting that the FCC's inaction persists due to Bernstein's and Newport's filings before the FCC opposing returning the license to PTNI). PTNI contends that the trial court should have required Bernstein and Newport to exercise good faith to proactively return the assets to PTNI following the vacatur of the receivership, judgment, and assignment. *See id.* at 42. PTNI stresses that the harm it suffers is significant because it cannot develop programming, market, or sell the station, or construct new facilities without return of the license. *See id.* at 43.

In contrast, the trial court found that it could not grant PTNI relief as to the return of the license, as this was strictly within the power of the FCC:

> [The trial c]ourt does not have the power under relevant case law to interfere in the administrative proceedings of the FCC as the FCC is a regulatory commission with its own authority and processes. [The trial c]ourt properly recognized that the FCC is the only government agency with jurisdiction and regulatory power over all forms of electrical communication and its exclusive jurisdiction extends to licenses. [PTNI] has further admitted this fact in prior proceedings before [the trial c]ourt. …[T]he record reflects that the FCC is aware that Bernstein is no longer a judicial appointed receiver, however[,] they still recognize him as the representative of the agency for its proceeding and have tolled its current proceedings in this matter. The August 10, 2021 Order of the FCC explicitly states, "[Bernstein] remains the [FCC] licensee of WEFG-LD with legal obligations and liabilities to third parties to preserve WEFG-LD's assets but no longer as court-appointed authority to take actions regarding the Station." Accordingly, the FCC has made it abundantly clear, consistent with its authority and jurisdiction, that it is aware that Bernstein has been removed by Order of [the trial c]ourt as receiver for [PTNI], however[,] they continue to recognize him as licensee. … [T]he relevant case law and [PTNI's] own admission in prior proceedings makes clear the FCC has the proper jurisdiction in this matter as it has exclusive jurisdiction over licenses.
>
> In the present matter, [PTNI] fails to recognize the difference between judicial jurisdiction and power. … Here, while the case law does grant [the trial c]ourt the jurisdiction for all "necessary proceedings" to wind up a terminated receivership, [The trial c]ourt does not have the power to interfere with the administrative proceedings of the FCC.

Trial Court Opinion, 9/13/22, at 10-11 (footnotes omitted).

We agree with the trial court's reasoning as to the FCC license. The FCC has "unified jurisdiction and regulatory power over all forms of electrical communication, whether by telephone, telegraph, cable, or radio." ***United States v. Sw. Cable Co.***, 392 U.S. 157, 167-68 (1968) (footnotes and quotation marks omitted); ***see also Nat'l Broad. Co. v. United States***, 319 U.S. 190, 214 (1943). As such, the FCC has the exclusive right to approve the

- 14 -

grant, assignment, or transfer of a license to broadcast television. *See* 47 U.S.C.A. § 310(d) ("No construction permit or station license, or any rights thereunder, shall be transferred, assigned, or disposed of in any manner, voluntarily or involuntarily, directly or indirectly, or by transfer of control of any corporation holding such permit or license, to any person except upon application to the Commission and upon finding by the Commission that the public interest, convenience, and necessity will be served thereby."); *see also* 47 C.F.R. § 73.3540(a) ("Prior consent of the FCC must be obtained for a voluntary assignment or transfer of control."); *FCC v. Prometheus Radio Project*, ___ U.S. ____, 141 S.Ct. 1150, 1155 (2021) (noting that the FCC "possesses broad statutory authority to regulate broadcast media 'as public convenience, interest, or necessity requires.'" (citation omitted)).

The United States Supreme Court previously addressed the question of a state court's jurisdiction when its actions affect a field regulated by the FCC. *See Radio Station WOW v. Johnson* 326 U.S. 120 (1945). In *Johnson*, the owner of a station had leased the station and transferred its FCC license, with FCC approval, to the lessee. *See id.* at 121. However, the state court later concluded that the lessee had acquired the lease by fraud, and directed "that the lease and license be set aside and that the original position of the parties be restored as nearly as possible." *Id.* at 122 (citation omitted). Further, although the state court recognized that only the FCC could return the license

to the owner, it ordered the parties to "do all things necessary" to secure a return of the license. *Id.* at 122 n.1; *see also id.* at 123.

The United States Supreme Court initially noted that where there is a conflict of the FCC's licensing authority and a state court's powers, attempts should be made to reconcile both interests, to establish both a consistent licensing policy and a mechanism to enforce state laws. *See id.* at 132 (stating that "if the States' [laws] can be effectively respected while at the same time reasonable opportunity is afforded for the protection of that public interest which [leads] to the granting of a license, the principal of fair accommodation between State and federal authority ... should be observed."). To that end, the Court emphasized the power of a state court to adjudicate issues involving FCC licenses as long as the state court does not affirmatively interfere with the FCC's authority to transfer, assign or otherwise dispose of licenses.[12] *See id.* at 131 ("We have no doubt of the power of the Nebraska court to adjudicate, and conclusively, the claim of fraud in the transfer of the station … and upon finding fraud to direct a reconveyance of the lease").[13] Based upon

_____

[12] When "a state court's decision is contrary to [FCC] policy, the [FCC] is neither bound by the state court order nor need recognize it." *Charles W. Cherry, II Caswell Cap. Partners, LLC c/o Erwin G. Krasnow, Esquire Gresham Commc'ns, Inc. c/o Dan J. Alpert, Esquire*, 24 F.C.C. Rcd. 2894, 2896 (2009)

[13] The Supreme Court later reaffirmed this holding. *See Regents of Univ. System of Ga. v. Carroll*, 338 U.S. 586, 602 (1950) (noting that the FCC
*(Footnote Continued Next Page)*

this logic, the Court concluded that the state court's action intruded on the exclusive jurisdiction of the FCC, ruling that the state court's decision improperly controlled the conduct of parties before the FCC and that the FCC was the ultimate arbiter regarding the disposition of the license. **See id.** at 130-131. Specifically, although the Court upheld the state court's fraud ruling, it found that the lower court's order "to do all things necessary" to secure the return of the license was an improper restriction on the FCC's licensing system and would have controlled the conduct of the parties before the FCC. **See id.** at 130-32.

Notably, the Court further observed that the "most troublesome question raised" was that the state court order setting aside the lease resulted in the separation of the leased station property from the broadcast license, which would, in effect, deprive the FCC of keeping the licensed properties and the license together and force the FCC's decision in favor of the party with the station's property. **See id.** at 131-32. Consequently, the Court held that the state court's order returning the property could not be executed until the FCC could act on the license in time that the public would not be deprived of the benefit of the station. **See id.** at 132.

---

"could make a choice only within the scope of its licensing power, *i.e.*, to grant or deny the license on the basis of the situation of the applicant. … [The FCC] has said frequently that controversies as to rights between licensees and others are outside the ambit of its powers." (footnotes omitted)).

- 17 -

It is well-settled that the Federal Communications Act explicitly prohibits the transfer of an FCC license without the express application to and approval of the transfer by the FCC and state courts have no power to award or transfer an FCC license to a party. **See** 47 U.S.C.A. § 310(d); 47 C.F.R. § 73.3540(a). Pointedly, any attempt by this Court to return the license would impugn the authority of the FCC to decide, as it is within its exclusive right, whether the transfer of the license would serve the public interest, convenience, and necessity. **See** 47 U.S.C.A. § 310(d); **see also Johnson**, 326 U.S. at 130-31; **In re Applications of Arecibo Radio Corp.**, 101 F.C.C.2d 545, 549-50 (1985). Therefore, we conclude that the trial court correctly concluded that it had no power to either transfer the license to PTNI, or direct Bernstein and Newport make all necessary filings before the FCC to transfer the license to PTNI within five days. **See Johnson**, 326 U.S. at 131-32; **In re NextWave Pers. Commc'ns, Inc.**, 200 F.3d 43, 54 (2d Cir. 1999) ("It is beyond the jurisdiction of a court in a collateral proceeding to mandate that a licensee be allowed to keep its license despite its failure to meet the conditions to which the license is subject.").

Nevertheless, although the FCC's evaluation of the public interest under the Federal Communications Act necessarily involves consideration of ownership of the physical broadcast assets, the FCC's exclusive jurisdiction over licensing does not extend to the physical assets of the television station. **See In re Merkley**, 94 F.C.C.2d 829, 830 (1983) (the FCC "has consistently

held that a broadcast license, as distinguished from the station's plant or physical assets, is not an owned asset or vested property interest[.]"); **see also In re Applications of Arecibo Radio Corp.**, 101 F.C.C.2d at 550 (noting that the FCC should have an opportunity to consider whether the station license should be assigned to the party possessing the station's physical assets).[14] As highlighted above, the FCC defers to state judicial determinations in many areas, including private disputes, fraud claims, and the enforcement of contracts. **See, e.g., Carroll**, 338 U.S. at 602; **Johnson**, 326 U.S. at 131.

Here, the FCC deferred deciding the petition to transfer the license pending the resolution by Pennsylvania courts of the private dispute between the parties involving the appointment of Bernstein as the receiver. **See** FCC Letter to Senator Pat Toomey, at 1 (unnumbered) ("Several parties have filed pleadings in connection with the application which raise questions concerning the facts of the receivership and PTNI's qualifications as a licensee. Staff in the Video Division have determined that the proceedings in Pennsylvania and California courts to resolve the receivership have not concluded. Because the Commission defers to courts to resolve private disputes, we generally do not

---

[14] Notably, this conclusion does not in any way bundle the license with the physical assets. **See Kidd Commc'ns v. F.C.C.**, 427 F.3d 1, 6 (D.C. Cir. 2005) (noting that state courts attempts to fashion remedial orders that treat a broadcast station's physical assets and the FCC license as a bundle "runs afoul of the [FCC's] insistence that a broadcast license be treated distinctly—its transfer depends on the [FCC's] determination of the public interest.").

act on such pleadings and/or applications until a private dispute has achieved finality."); *see also* FCC Letter (Request for Tolling), at 2-3 (unnumbered) ("Until the litigation involving the Station's ownership is resolved and a final decision rendered, neither Bernstein nor the prevailing party will be able to take the necessary steps to complete construction of the Station's permanent facilities.").

Clearly, in this case, PTNI's request to return the physical assets, including the tower broadcasting equipment, tower lease, station records, and programming files, does not raise a substantial federal question and does not control the FCC's determination of who possesses of the FCC license connected to the assets. *See Johnson*, 326 U.S. at 131-32 (holding that the state courts have the power to adjudicate a state claim and order the transfer of the station itself); *see also Arecibo Radio Corp.*, 101 F.C.C. at 550. The trial court's conclusion that it lacked the power to grant any relief would essentially prevent PTNI from obtaining a return of the physical assets based upon the vacated receivership order, as the trial court, not the FCC, has jurisdiction to conduct further proceedings following vacatur to discharge the receiver and return property. *See Warner v. Conn*, 32 A.2d 740, 741-42 (Pa. 1943) (noting that the "possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."); *see also* 65 Am. Jur. 2d Receivers § 90 (noting that when an

order vacates a receivership, "the authority vested in the receiver to manage the [assets] terminates."); ***Northampton National Bank v. Piscanio***, 379 A.2d 870, 871-72 (Pa. 1977) (stating that the trial court retains jurisdiction to conduct proceedings necessary to conclude the receivership, discharge the receiver, or provide relief to the aggrieved party).

Therefore, we reverse this portion of the trial court's order and direct the trial court to return the physical assets to PTNI. However, we also instruct the trial court to stay the execution of this transfer to allow the FCC to decide the license issue. ***See Johnson***, 326 U.S. at 132 (concluding that "State power is amply respected if it is qualified merely to the extent of requiring it to withhold execution of that portion of its decree requiring retransfer of the physical properties until steps are ordered to be taken, with all deliberate speed, to enable the [FCC] to deal with new applications in connection with the station."); ***In re Merkley***, 94 F.C.C.2d at 838-39 (stating that "if an assignment application's related contract of sale violated existing rules or policies, we would withhold our approval until the problem was corrected. In this way, while the interpretation and enforcement of contracts are within the jurisdiction of state courts, the Commission has established certain public interest limitations on a licensee's contractual authority and imposes these limits by withholding its approval of a pending assignment application. Moreover, through this procedure, conflicts between Commission policy and state laws can be avoided."). The trial court, in its role as Bernstein's principal,

- 21 -

may exercise its discretion to order Bernstein to provide notice of this decision to the FCC.[15]

We conclude by highlighting that no receivership was granted in California, and the California Superior Court specifically vacated the default judgment against PTNI.[16] Moreover, as noted above, the trial court vacated Bernstein's receivership in October 2019 and this Court dismissed Newport's appeal in April 2021, and the parties do not dispute that the vacatur of the receivership order is final. Likewise, the order vacating the assignment order transferring Glanton's shares in PTNI to Newport and the foreign judgment are also final. To put it another way, the proceedings in Pennsylvania have concluded and Bernstein's receivership has terminated.

PTNI's petition for reconsideration and Bernstein's application to assign the license to PTNI are currently pending before the FCC, and it now has the

_____

[15] We emphasize that while the FCC lists Bernstein as the possessor of the license, Bernstein does not have any personal right to possession of the license, as he is merely an agent for the court. We do not reach the issue of whether the court can direct Bernstein's advocacy before the FCC as its agent, as opposed to in his personal capacity, as that issue is not currently before us.

[16] While it appears Newport has filed a new complaint against PTNI in California, the parties have not established a receivership was ordered. Moreover, we highlight that the California Court of Appeals previously ruled that a judgment against PTNI in this case "would pin the financial burden of the wrongdoers' risk-taking on an innocent third party who had no stake in the scheme[,]" and "[s]uch a result would run contrary to public policy and the objectives of the law." *Luxury Asset Lending, LLC*, 270 Cal. Rptr. 3d at 738-39.

power to exercise its discretion to decide whether the license should be transferred to PTNI due to the conclusion of the Pennsylvania proceedings and the vacatur of Bernstein as receiver. The various parties at issue may make their arguments before the FCC, and this decision does not interfere with Bernstein's or Newport's right to assert before the FCC any argument regarding the potential transfer of the FCC license to PTNI or any potential infringement on the FCC's determination of all public interest issues related to licensing. **See Johnson**, 130 U.S. at 130-31 (holding that in taking steps to place a matter before the FCC, a state court cannot prohibit interested parties from making arguments to the FCC concerning the merits of the matter); **In re Applications of Arecibo Radio Corp.**, 101 F.C.C.2d at 549 (noting that "in taking steps to place a matter before the Commission, a court can neither prohibit interested parties from making arguments to the Commission concerning the merits of the matter nor infringe in any way the Commission's exclusive, jurisdiction over licensing matters.").

Accordingly, we affirm the trial court's order as to the license, and reverse the order as to PTNI's physical assets related to the television station and stay the execution of the return of the assets pending the FCC's license decision. Furthermore, we underscore that the receivership is vacated and that under Pennsylvania law, the broadcast assets are owned by PTNI. PTNI must now turn to the FCC to obtain a determination of possession of the license before it can enforce its possession of the broadcast assets.

Order affirmed in part and reversed in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/07/2023